STATE of Minnesota, DEPARTMENT OF PUBLIC SAFETY, Respondent,

v.

**Dennis Earl WIEHLE, Appellant.**

**No. 49408.**

Supreme Court of Minnesota.

Nov. 30, 1979.

---

Nichols & Willeke and Richard J. Kruger, Minneapolis, for appellant.

Warren Spannaus, Atty. Gen., and Joel A. Watne, Sp. Asst. Atty. Gen., St. Paul, for respondent.

Heard before PETERSON, TODD, and YETKA, JJ., and considered and decided by the court en banc.

TODD, Justice.

Dennis Earl Wiehle was arrested by a citizen on suspicion of driving while intoxicated (DWI). While he was being transported by the police for chemical testing, he became unconscious and was taken to the hospital. There, at the direction of the

police, a blood sample was taken. Wiehle's license was suspended under Minnesota's implied consent law. The suspension order was sustained by the trial court whose decision was affirmed by an appeals panel of the district court. We affirm.

On July 13, 1977, Wiehle was involved in a hit-and-run automobile accident. He was arrested by a citizen and turned over to the Minneapolis Police Department upon suspicion of DWI. The officers advised Wiehle that he was under arrest and that he was being taken to the police station for chemical testing. He did not object. The officers did not give Wiehle any of the implied consent advisory information as prescribed by Minn.Stat. § 169.123 (1976) at that time. While being transported to the police station, Wiehle went into convulsions and was rushed to Hennepin County General Hospital in an unconscious condition. At the direction of a police officer, a blood sample was obtained and subsequently tested, revealing a blood alcohol content of .157 percent. The officers completed an implied consent reporting form, indicating there had been consent to the test, but it is undisputed that Wiehle never consented to the blood test and was never given implied consent advisory information prior to the taking of the test. Based on the results of the test, the commissioner of public safety proposed revocation of Wiehle's driving privileges for 90 days pursuant to Minn.Stat. § 169.127, subd. 2.[1] Wiehle requested a hearing which was held in the Municipal Court of Hennepin County, the order of suspension was sustained, and the decision of the trial court was affirmed by a three-judge panel of the district court. We granted discretionary review.

The issue presented is whether the test results of a blood sample taken from an unconscious person may be used in a license revocation proceeding even though the advisory information contained in the implied consent law was not given to the unconscious person.

---

1. Minn.Stat. § 169.127 was repealed in 1978. 1978 Minn.Laws, ch. 727, § 11. However, the substantive aspects of § 167.127, subd. 2, were retained in the additions to Minn.Stat. § 169.-123, subd. 4. 1978 Minn.Laws, ch. 727, § 3.

1. Initially, we wish to settle the question of the constitutionality of the blood withdrawal. The trial court in this case rendered its decision prior to our decision in *State v. Oevering*, 268 N.W.2d 68 (Minn.1978). The appeals panel affirmed the trial court's decision because it concluded that the principles established in *Oevering* controlled in this case. The argument was posed, however, that *Oevering* is limited to its facts and should not be extended to apply to implied consent situations. In *Oevering*, we held that the test results of a blood sample taken from an unconscious person could be used in criminal negligence proceedings if certain conditions were met. Although we did not then decide what conditions must be met before blood test results can be used in implied consent proceedings and misdemeanor prosecutions, we find no logical reason not to extend *Oevering's* rationale to these situations.

This decision does not conflict with *State v. Gallahue*, 273 N.W.2d 660 (Minn.1978), in which we affirmed an order suppressing blood test results in misdemeanor prosecutions joined with a criminal negligence prosecution. In *Gallahue*, the prosecution on appeal conceded that the test results were inadmissible, so we did not rule on the constitutional issue. We now conclude that a statutory scheme for securing blood test results is constitutional so long as it does not conflict with the principles of *Oevering*.

The present implied consent law satisfies all constitutional requirements. In order to preserve the evanescent evidence of a blood alcohol level, the law permits officers to take a blood sample from a driver about whom there is probable cause to believe that the driver is driving while intoxicated.[2] This procedure corresponds to the principles established in *Oevering*; namely, an exigency to preserve evidence, probable cause to support formal arrest, and a highly unobtrusive search.[3] Thus, the taking of Wiehle's blood sample was permissible, absent violation of other statutory prohibitions contained in the implied consent law.

2. To determine whether statutory prohibitions were violated, we must determine the nature of the rights provided to persons involved in implied consent situations. The Minnesota implied consent law, Minn.Stat. § 169.123, subd. 2 (1976), provided in part:

[N]o action shall be taken against the person for declining to take a direct blood test unless either a breath, or urine test was available. At the time the peace officer requests such chemical test specimen, he shall inform the arrested person that his right to drive may be revoked or denied if he refuses to permit the test and that he has the right to have additional tests made by a person of his own choosing.

In *Prideaux v. State, Dept. of Public Safety*, 310 Minn. 405, 247 N.W.2d 385 (1976), we required that the police officer also inform the person of a right to a reasonable time within which to consult with counsel before taking or refusing to take the test. Obviously, an unconscious person cannot respond to this advisory information. Wiehle claims, however, that the statute and our decision conferred affirmative rights upon him which he must be allowed to exercise after regaining consciousness, since he was unconscious when the blood sample was withdrawn. We decline to accept this view.

In examining the implied consent statute, we find that a driver of a motor vehicle in Minnesota is deemed to have consented to the testing procedures under Minn.Stat. 169.123, subd. 2(a), although there also exists the statutorily conferred right to revoke this consent. Our legislature has not specifically dealt with the problem of whether the unconscious driver retains the right to revoke as some legislatures have done. *See* West's F.S.A. § 322.261(2)(c) (Florida) and D.C.Code §§ 40–1002(b), 40–

---

2. The precise scheme established by the legislature in Minn.Stat. § 169.123, subd. 2, is more rigorous than a mere probable cause requirement. The legislature is free, of course, to adopt this stricter scheme if it so chooses.

3. We repeat our admonition from *State v. Oevering*, 268 N.W.2d 68, at 73, n. 4 (Minn.1978), that formal arrests should be made "whenever the suspect appears capable of understanding and communicating with the arresting officer."

1005(b) (District of Columbia). However, the rationale of *Prideaux* is applicable to this problem.

 In *Prideaux,* we construed the implied consent statute in conjunction with other statutes relating to a defendant's right to consult an attorney. We concluded that since the evidence obtained under implied consent proceedings could be used in subsequent criminal proceedings, either felony or misdemeanor, the right to consult an attorney was viable. If the defendant was not informed of this right, the results of the test would be suppressed for all purposes. However, we carefully limited the exercise of this right and allowed its exercise only if done in such a way so as not to unreasonably interfere with the evidence-gathering purposes of the implied consent statute. This interpretation did not recognize an unlimited right to consult counsel, but only a limited right contingent upon the driver's physical ability to consult with counsel and the reasonably timely exercise of this ability. We believe that the other rights of the implied consent statute are similarly limited by reasonableness.

This interpretation of the statute is supported by the subsequent revision of the implied consent law in 1978. The pertinent parts of the Minnesota implied consent law, § 169.123, provide:

Subd. 2(a) * * * No action may be taken against the person for declining to take a direct blood test unless either a breath or urine test was available and offered.

(b) At the time a chemical test specimen is requested, the person shall be informed:

(1) that if testing is refused, the person's right to drive will be revoked for a period of six months; and

(2) that if a test is taken and the results indicate that the person is under the influence of alcohol or a controlled substance, the person will be subject to criminal penalties and the person's right to drive may be revoked for a period of 90 days; and

(3) *that the person has a right to consult with an attorney but that this right is limited to the extent that it cannot unreasonably delay administration of the test or the person will be deemed to have refused the test; and*

(4) that after submitting to testing, the person has the right to have additional tests made by a person of his own choosing. [Emphasis added.]

The italicized portion of the statute was added by the legislature apparently in response to our decision in *Prideaux.* This legislation included the limitation of reasonableness. Thus, we find both this court and the legislature prescribing rights of persons involved in implied consent proceedings within the framework of reasonableness.

Since Wiehle's physical condition precluded him from refusing the test, we conclude that his consent remained continuous. This continuing consent permitted use of the blood samples obtained from him in an implied consent proceeding. However, we emphasize that the limitation and prerequisites imposed by *Oevering* must be met before such evidence is admissible. In this case, these standards are satisfied.

Affirmed.