STATE of Minnesota, Respondent,

v.

Wesley Paul OLSON, Appellant.

No. C1-83-1513.

Court of Appeals of Minnesota.

Jan. 18, 1984.

Stephen R. Erickson, Albert Lea, for appellant.

Jeffrey B. Ring, Asst. County Atty., Albert Lea, for respondent.

Heard, considered and decided by POPOVICH, C.J., and FOLEY and SEDGWICK, JJ.

## OPINION

SEDGWICK, Judge.

This is an appeal from a pretrial order of the Freeborn County Court suppressing the results of a Breathalyzer test in a prosecution for driving while intoxicated (DWI) and driving with blood alcohol in excess of .10, and dismissing the complaint for lack of probable cause. We reverse.

### Facts

Shortly before 6:00 a.m. on July 9, 1983, Deputy Ron Deckard of the Freeborn County Sheriff's Office, was dispatched to the scene of an accident where two men reportedly were fleeing the scene. As Deckard neared the scene he noticed sharp "S" tracks in the gravel road and a car in the ditch. He concluded that the car rounded the corner too fast and the driver lost control. This conclusion was later affirmed by the driver, Wesley Olson. No personal injury or property damage resulted.

In response to Deputy Deckard's initial questions, Olson said he was both the owner and driver of the car. Deputy Deckard asked to see Olson's drivers license which he produced with no difficulty. Deputy Deckard detected a faint odor of alcohol on Olson's breath, noticed that Olson's eyes were glassy and that Olson was "very, very methodical in his movements ... like he was trying very hard to keep control."

Olson was then asked to perform some field sobriety tests.

In holding his arms up, tipping his head back and closing his eyes, Olson swayed more than normal. When asked to touch the tip of his nose he touched his upper lip then slid his finger to his nose. Olson also had "great difficulty" in performing the heel-to-toe test where he was required to walk a straight line placing one foot immediately in front of his other foot.

Deputy Weigel, a more experienced deputy who arrived at the scene, asked Olson to recite the alphabet and count backwards from 100 to 80. In reciting the alphabet Olson repeated "l-m-n" and in counting backwards he got confused in the 80s.

Olson testified that he was distracted by Deputy Deckard moving his squad car to make room for a tractor that was coming to pull the car out of the ditch and that this caused his confusion in counting backwards. However, Deputy Deckard testified that he moved his car before Deputy Weigel began his testing. Deputy Weigel did not discuss the results of those tests with Deckard, so the only way he could have put the results of the tests in his report would have been by personally viewing them.

In any event, before his arrest Olson never informed Deputy Deckard that he felt he had been distracted and that that could be an explanation for his otherwise apparent confusion.

Immediately after the accident the defendant and his passenger ran to Olson's girlfriend's house, some 200 to 500 yards away, to ask her father for help with his tractor before he left for his daily chores. This explains the arrival of the tractor so soon after the accident and why the men were seen running from the car after it slid into the ditch.

Based on everything Deputy Deckard observed before Deputy Weigel's testing, Deputy Deckard concluded that Olson was a borderline DWI case. However, after observing Olson flub the alphabet and become confused in counting backward, Dep-

uty Deckard determined that there was sufficient probable cause to warrant an arrest.

After Olson was arrested he was read the Miranda rights, and the Minnesota Implied Consent Advisory, which he said he understood. He agreed to take the breath test and his blood-alcohol reading was .14.

Olson admitted that he had been drinking practically all night and that he drank his last beer within one hour of the accident.

Upon the above facts, the trial court granted Olson's motion to suppress the results of the Breathalyzer test and dismissed the case.

### Issue

The issue is whether there was probable cause to invoke the implied consent law.

### Analysis

■ Probable cause and reasonable cause are synonymous. Probable cause for an arrest has been defined to be "a reasonable ground of suspicion supported by circumstances sufficiently strong in themselves to warrant a cautious man in believing the accused to be guilty." *Garske v. United States*, 1 F.2d 620, 623 (8th Cir. 1924) as cited in *State v. Harris*, 265 Minn. 260, 264, 121 N.W.2d 327, 330, *cert. denied* 375 U.S. 867, 84 S.Ct. 141, 11 L.Ed.2d 94 (1963).

Reasonable cause has been defined to be "such a state of facts as would lead a man of ordinary care and prudence to believe and conscientiously entertain an honest and strong suspicion that the person is guilty of a crime." *People v. Ingle*, 53 Cal.2d 407, 412, 2 Cal.Rptr. 14, 17, 348 P.2d 577, 580 (1960), as cited in *State v. Harris*, 265 Minn. 260, 121 N.W.2d 327 (1963).

The *Harris* court in analyzing the probable cause necessary for an arrest, adopted and refined the *People v. Ingle* probable cause definition and directed that "probable cause is not to be evaluated from a remote vantage point of a library, but rather from the point of view of a prudent and cautious *officer* on the scene at the time of the arrest." (emphasis added) *Id.* 265 Minn. at 331.

This definition was applied in *State v. Stewig*, 281 Minn. 331, 161 N.W.2d 673 (1968), where the court said:

Probable cause is not based upon the 'reasonable man' concept, but upon the situation of the officer and the particular situation in which he finds himself, conditioned by his observations, information, training and experience.

■ The officer's task is to make a practical, common-sense decision in light of all the circumstances, including innocent behavior or behavior which may later be shown to have exculpatory explanations.

Therefore, even if there are valid exculpatory explanations for Olson's running from the scene, his "very controlled" speech, his glassy eyes, and his inability to recite the alphabet or to count backwards without error, the officer may still consider these facts in assessing the totality of the circumstances and determining probable cause.

■ The State cites *State v. Oevering*, 268 N.W.2d 68 (Minn.1978) to indicate just how few facts are required to constitute probable cause. However, *Oevering* is a criminal negligence case, and probable cause to arrest for criminal negligence is different from probable cause to arrest for violation of Minn.Stat. 169.121. For a criminal negligence arrest there must be probable cause to believe the crime of criminal negligence has been committed, and probable cause to believe that the taking of a chemical test will result in discovery of evidence that will aid in the prosecution of that crime.

■ For a DWI arrest there must be probable cause to believe the defendant was driving, operating, or in actual physical control of a motor vehicle while under the influence of alcohol. See, *State v. Aguirre*, 295 N.W.2d 79 (Minn.1980); *State v. Speak*, 339 N.W.2d 741, 744 (Minn.1983).

■ There is no formula by which to judge the reasonableness of a given case. Each must be decided on its own facts and circumstances. In reviewing an officer's

probable cause determination "great deference" should be paid by reviewing courts. *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), as cited in *Illinois v. Gates*, —— U.S. ——, 103 S.Ct. 2317, 2331, 76 L.Ed.2d 527 (1983).

■ An after-the-fact scrutiny should not take the form of a de novo review. Rather, the duty of the reviewing court is simply to ensure that the officer had a substantial basis for concluding that probable cause existed at the time of invoking the implied consent law. *Jones v. United States*, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960).

■ All the facts and circumstances known or observed by Deputy Deckard, including his training and experience, indicate there was ample probable cause to require a breath test of Olson.

In reaching this result we follow the practice, adopted by the Minnesota Supreme Court, of construing remedial statutes relating to drunken driving in favor of the public interest and against the private interests of the drivers involved. *State v. Juncewski*, 308 N.W.2d 316, 319 (Minn. 1981).

The July 9, 1982 Order of the Freeborn County Court is reversed. We hold that the result of the breath test administered to Respondent Olson is admissable at trial. The case is remanded to the Freeborn County Court for trial on the merits.

Reversed and remanded.