Timothy R. **THORNTON**,
Petitioner, Respondent,

v.

**COMMISSIONER OF PUBLIC SAFETY,** Appellant.

No. C4–85–1851.

Court of Appeals of Minnesota.

April 8, 1986.

Melvin B. Goldberg, Minneapolis, for respondent.

Hubert H. Humphrey, III, Atty. Gen., Kenneth H. Bayliss, III, Sp. Asst. Atty. Gen., St. Paul, for appellant.

Heard, considered and decided by CRIP-PEN, P.J., and WOZNIAK and SEDG-WICK, JJ.

## OPINION

CRIPPEN, Judge.

A law enforcement officer asked a driver who had been involved in an accident to submit to alcohol concentration testing. The officer determined that the driver made a reasoned refusal, so the Commissioner of Public Safety revoked the driver's driving privileges. The trial court found that respondent was incapable of deciding to refuse testing and that under the implied consent law, respondent should have been tested. The Commissioner appeals. We reverse.

## FACTS

On March 13, 1985, at approximately 11:50 p.m., St. Paul Police Officer Michael Hinzman arrived at the scene of an accident near the intersections of Snelling and Lincoln Avenues in St. Paul. Witnesses advised Hinzman that a vehicle pulled over onto the side of the roadway was one of the vehicles involved in the accident. Hinzman observed that the vehicle had extensive front-end damage.

As Hinzman was walking towards the vehicle, a man later identified as Timothy Thornton, the respondent, got out of the car. Hinzman observed that he was bleeding extensively from a wound on the front of his head. When Hinzman asked respondent for his driver's license, he could smell a strong odor of alcohol on his breath. He also observed that respondent staggered when he walked and was unsteady and disoriented. The officer assisted respondent to the paramedic's vehicle, and the paramedics transported respondent to the hospital.

In the hospital emergency room, at approximately 12:15 a.m., Hinzman read to respondent the implied consent advisory. Respondent stated he understood his rights, that he would not submit to testing until he talked to a lawyer, and that his

reason for refusing was that he wanted to call a lawyer. Hinzman did not offer respondent further tests, and he completed the advisory at 12:18 a.m.

Officer Hinzman noted on the Alcoholic and Drug Influence Report that respondent was disoriented. He also testified at the hearing that respondent appeared disoriented, but that respondent understood the advisory because there was no indication that he did not understand.

Respondent testified that he was on his way home when he hit an ice patch on the road and hit a car from behind as he tried to swerve to avoid it. He stated that his last clear recollection of what occurred was hitting the ice patch and trying to avoid the car in front of him. Respondent stated he was conscious but that after the accident he was confused and disoriented and did not really comprehend most things that were happening.

The trial court found that respondent did not withdraw his consent to be tested and that the officer should have administered a test to determine if respondent was under the influence of alcohol. The trial court rescinded the revocation of respondent's driving privileges. The Commissioner appealed.

## ISSUES

In the circumstances here, was respondent incapable of refusing an alcohol concentration test?

## ANALYSIS

The Minnesota implied consent law provides that a person given driving privileges in Minnesota gives to the State an implied consent to have blood, breath, or urine tested by a law enforcement officer for the presence of alcohol, provided the officer has probable cause to believe the person was driving while under the influence of alcohol. Minn.Stat. § 169.123, subd. 2(a) (1984). The person may refuse to be tested, but that will result in a one-year revocation by the Commissioner of Public Safety of the person's driving privileges. *Id.*

§ 169.123, subd. 4. If a driver is unconscious or is otherwise incapable of refusing testing, the implied consent is deemed to be continuing and an officer may administer the test. *Id.* § 169.123, subd. 2c.

We have previously held that the trial court may scrutinize the evidence to be certain that it supports the Commissioner's claim of capability or incapability. *See Stiles v. Commissioner of Public Safety,* 369 N.W.2d 347, 352 (Minn.Ct.App.1985). In *Stiles,* the officer who dealt with the driver testified unequivocally that the driver was disoriented when the advisory was read.

■ In this case, the officer concluded that respondent was capable of understanding the implied consent advisory and that he made a reasoned decision when he refused testing. There is evidence in the record that supports this claim. The evidence indicates that although respondent was injured and the officer thought then that he was somewhat disoriented, he also was able to respond to the officer that he would not submit to testing and that he wanted to contact a lawyer. This indicates respondent was capable of making a decision. We conclude that the trial court erroneously determined that respondent was incapable of refusal.

Respondent argues that the Commissioner did not meet the burden of proving that respondent had refused testing. That failure, he argues, is fatal to the Commissioner's appeal.

■ We do not agree that the Commissioner has failed to meet his burden. As discussed above, the Commissioner offered evidence that respondent was capable of refusal. That showing put the duty on respondent to show that he was incapable. Under *Stiles,* a finding of incapacity depends on a record of circumstances such that this court is left with a "firm conviction" that the driver was incapable of making a reasoned refusal. *See Stiles,* 369 N.W.2d at 352. Those circumstances are not evident here.

■ Public policy, respondent contends, dictates that the Commissioner have a higher burden to prove that drivers were capable of refusing testing and that there was no continuing consent to testing. To the contrary, public policy dictates that the Commissioner not be required in every case where testing was refused to prove capability by a preponderance of evidence. Such a burden of proof placed upon the Commissioner would invite voluminous litigation.

Public policy favors the Commissioner's position in another sense as well: to enlarge the Commissioner's burden as respondent advocates would put a premium on the testing of drivers where the driver remains able to decide whether to permit testing. Such a course would directly conflict with the notion of the choice for refusal under the implied consent law. The legislature has expressly preserved the choice to refuse. *See* Minn.Stat. § 169.123, subd. 4. We are not free to limit the exercise of that choice by demanding testing in every case where the driver is hospitalized because of injuries.

## DECISION

The trial court erroneously concluded that respondent had not withdrawn his consent to be tested. The officer had concluded that respondent was capable of making a reasoned refusal and that respondent had refused testing. The evidence supports that conclusion, and it should not have been overturned.

Reversed.