**STATE of Minnesota, Respondent,**

v.

**Ronald Lee STRANSKY, Appellant.**

No. CO–85–1488.

Court of Appeals of Minnesota.

April 15, 1986.

Hubert H. Humphrey, State Atty. Gen., Roger S. Van Heel, Stearns Co. Atty., Leigh C. Taylor, Asst. Stearns Co. Atty., St. Cloud, for respondent.

Roger P. Schmidt, St. Cloud, for appellant.

Heard, considered and decided by FOLEY, P.J., and SEDGWICK and NIERENGARTEN, JJ.

## OPINION

SEDGWICK, Judge.

Ronald Stransky appeals denial of his motion to suppress the results of blood alcohol tests in a prosecution for DWI. We affirm.

## FACTS

Appellant Ronald Stransky was involved in an automobile accident on June 27, 1984. He was taken to the St. Cloud Hospital for treatment of injuries he sustained in the accident. Stearns County Deputy David Nohner went to the hospital to investigate the accident.

Nohner talked briefly to the passengers in Stransky's car and then went to talk to Stransky. Nohner testified that when he entered the room where Stransky was being treated, Stransky was lying on his back on a table.

Nohner asked Stransky if he remembered driving the car. He asked this question at least three times. Finally, Stransky opened his eyes and said that he remembered driving. Nohner then asked Stransky if he had insurance on the car. Stransky answered in the affirmative. After answering this question, Stransky closed his eyes.

Because Nohner had detected the odor of alcohol on Stransky's breath, he asked him how much he had had to drink. Stransky did not respond. Nohner then said something to the effect of "Ron, can you hear me?" Again, Stransky did not respond or open his eyes.

Nohner then asked that a blood sample be taken. Nohner remained in the room while the blood was being drawn. He testified that Stransky's eyes remained closed the entire time and that he appeared to be unconscious. Nohner made no further attempts to talk to Stransky. He never read the implied consent advisory to Stransky.

Stransky testified that he did not answer Nohner's questions because he was tired and because he was in pain. He denied that he felt woozy or passed out.

The trial court denied Stransky's motion to suppress the results of the blood test reasoning that the implied consent procedures have no bearing on the admissibility of blood test results in criminal cases. The court noted that its position appeared to conflict with *State v. Aguirre*, 295 N.W.2d

79 (Minn.1980), but dismissed the language of *Aguirre* as dicta.

The State argued that the blood test results were admissible because of the officer's good faith belief that Stransky was unconscious; therefore, Stransky's implied consent remained in effect. *See State, Department of Public Safety v. Wiehle*, 287 N.W.2d 416 (Minn.1979); *Stiles v. Commissioner of Public Safety*, 369 N.W.2d 347 (Minn.Ct.App.1985). The trial court expressly declined to decide the motion on this basis.

## ISSUE

Did the trial court err in admitting blood alcohol test results when the implied consent advisory was not read to appellant, but where the police officer believed appellant was unconscious?

## ANALYSIS

The DWI statute in effect at the time of this incident provides:

> Upon the trial of any prosecution arising out of acts alleged to have been committed by any person arrested for driving * * * a motor vehicle in violation of subdivision 1, the court may admit evidence of the amount of alcohol * * * in the person's blood * * * if the test is taken voluntarily or pursuant to [the implied consent statute].

Minn.Stat. § 169.121, subd. 2 (Supp.1983).

The trial court read the words "voluntarily or pursuant to [the implied consent statute]" to be merely illustrative and not words of limitation. The court correctly recognized, however, that its interpretation of the statute is inconsistent with language in *State v. Aguirre*, 295 N.W.2d 79 (Minn. 1980). In *Aguirre*, the Minnesota Supreme Court stated:

> The purpose of the statute is to protect ordinary drivers suspected of driving while under the influence from being subjected to nonconsensual removal of blood * * *. Thus, if an officer merely has probable cause to arrest a driver for driving while under the influence or driv-

ing with blood alcohol in excess of .10% by weight, the statute does not give the officer any incentive to order a nonconsensual removal of the driver's blood because *only blood removed voluntarily or in compliance with the provisions of the implied consent law* will be admissible in any subsequent prosecution for driving while under the influence of alcohol or driving with blood alcohol in excess of .10% by weight.

295 N.W.2d at 82 (emphasis added).

The clear language of the statute supports this interpretation. That test results be obtained either voluntarily or pursuant to implied consent is a prerequisite to admissibility in a subsequent prosecution under Minn.Stat. § 169.121, subd. 1 (Supp. 1983).

Nonetheless, denial of appellant's motion to suppress was not error. We believe the test results were admissible under *State, Department of Public Safety v. Wiehle*, 287 N.W.2d 416 (Minn.1979) (now codified at Minn.Stat. § 169.123, subd. 2c (1984)).

*Wiehle* held blood test results admissible in a revocation proceeding even though the advisory had not been given but where the suspect was unconscious. The court concluded that Wiehle's implied consent remained continuous because his physical condition prevented him from refusing the test. *See also State, Department of Public Safety v. Hauge*, 286 N.W.2d 727 (Minn. 1979); *accord Stiles v. Commissioner of Public Safety*, 369 N.W.2d 347 (Minn.Ct. App.1985) (where injured suspect was disoriented police officer should have deemed implied consent continuing and ordered a test).

The officer here testified that, based on his observation of Stransky and the fact that Stransky did not respond in any manner, he thought Stransky had lost consciousness. At that point, the officer was justified in ordering the blood test.

## DECISION

Blood alcohol test results were properly admitted even though the implied consent

advisory was not given where the police officer believed the suspect to be unconscious.

Affirmed.