**Jerome T. GOLINVAUX, Jr.,
Petitioner, Appellant,**

v.

**COMMISSIONER OF PUBLIC
SAFETY, Respondent.**

No. C1-86-1896.

Court of Appeals of Minnesota.

April 14, 1987.

Mark W. Peterson, Minneapolis, for petitioner, appellant.

Hubert H. Humphrey, III, Atty. Gen., Joel A. Watne, Sp. Asst. Atty. Gen., St. Paul, for respondent.

Heard, considered and decided by CRIPPEN, P.J., and WOZNIAK and MULALLY *, JJ.

## OPINION

EDWARD D. MULALLY, Acting Judge.

Appellant's driver's license was revoked for failing an alcohol concentration test. He petitioned for judicial review and the sole issue was whether the police officer properly advised him of the consequences of taking or refusing to take the test. The trial court sustained the revocation. Appellant moved to reopen and the trial court denied the motion. Appellant appeals from the trial court's orders. We affirm.

## FACTS

In the early morning hours of July 16, 1986, Plymouth Police Officer Dale Duerksen, a certified peace officer, was called to the scene of a motor vehicle accident near the intersection of Highway 55 and Interstate 494 in Plymouth, Minnesota. Upon arriving at the scene, Duerksen encountered appellant, the driver of one of the vehicles involved in the accident. Appellant was under 18 years of age. Duerksen talked with appellant for 15 to 20 minutes before placing him in the back of his squad car. While Duerksen was administering a field sobriety test to appellant, he became visibly upset, and began sobbing after being placed in the back seat of the squad car. Appellant's father arrived and sat in the back seat of the squad car next to appellant; after several minutes he was able to calm him down.

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

Duerksen, after observing indicia of intoxication, arrested appellant for driving while under the influence. He then began reading the implied consent advisory to appellant at 12:56 a.m. and completed it at 1:04 a.m. Duerksen knew appellant was under 18. The controversy in this case, in part, arises from the fact that the officer mistakenly read appellant a paragraph which applies to those drivers 18 years and over:

> If testing is refused, your right to drive will be revoked for a minimum period of one year.

He also read him the following provision, applicable to drivers under age 18:

> If you refuse testing your right to drive will be revoked for a period of one year or until you reach the age of 18, whichever is greater.

After Duerksen finished reading the advisory, appellant asked Duerksen what would happen to him. Duerksen told appellant he might lose his license until he was 18 if he refused testing. In an attempt to reassure appellant, Duerksen told him that the juvenile authorities would handle his case, and he might get a lenient judge. He testified that some of the information he gave to appellant pertained to the potential DWI prosecution, rather than the implied consent proceeding, and he did not make the distinction between the two clear to appellant while he was talking to him.

Duerksen then asked appellant if he understood what had just been explained to him, and he said "Yes." Duerksen offered appellant a breath test, which he took, and which indicated an alcohol concentration of .13. His driver's license was revoked.

Appellant's father testified that Duerksen, in answer to his question concerning the ramifications of his son submitting to testing, failed to distinguish between potential consequences relating to the implied consent proceeding and those relating to any DWI prosecution. Appellant did not testify.

The trial court sustained the revocation, finding no showing of confusion, and no prejudice in the implied consent proceeding resulting from any improper information. The appellant moved to reopen, to allow him to testify as to his confusion. His attorney asserted that while he believed appellant's confusion was established as a matter of law, the referee had a different view, and appellant should not be penalized by his counsel's possibly erroneous interpretation of the law. The trial court denied appellant's motion, and appellant appeals.

## ISSUES

1. Did the officer improperly inform appellant of his rights and the consequences of taking or refusing the test?

2. Did the trial court abuse its discretion when it denied appellant's motion to reopen the hearing?

## ANALYSIS

1. Appellant's driving privileges were revoked for failing the Intoxilyzer test. Minn.Stat. § 169.123, subd. 4 (1984). He challenges the revocation, contending that the officer's reading of the implied consent advisory and subsequent discussion was not only an incorrect statement of Minnesota law, but also was so confusing and misleading as to render the advisory improper. He contends that the officer did not properly inform him of his rights and the consequences of taking or refusing the test, as required by Minn.Stat. § 169.123, subd. 2. Minn.Stat. § 169.123, subd. 6(2) (1984).

Minn.Stat. § 169.123, subd. 2(b) (Supp. 1985) provides in relevant part:

> At the time a test is requested, the person shall be informed:
>
> \* \* \* \* \* \*
>
> (2) that if testing is refused, the person's right to drive will be revoked for a minimum period of one year or, if the person is under the age of 18 years, for a period of one year or until he or she reaches the age of 18 years, whichever is greater.

The officer here advised appellant that:

If testing is refused, your right to drive will be revoked for a minimum period of one year.

The preceding is applicable to drivers 18 years and older. He also informed appellant:

If you refuse testing your right to drive will be revoked for a period of one year or until you reach the age of 18, whichever is greater.

Appellant was given the information specifically applicable to under age 18 drivers, as required by Minn.Stat. § 169.123, subd. 2(b). *Holtz v. Commissioner of Public Safety,* 340 N.W.2d 363, 365 (Minn.Ct.App. 1983). Further, a careful examination of the warnings show that the under 18 warning is more specific than the 18 and over warning, but does not conflict with it. The rights under the implied consent law are limited by reasonableness. *State, Department of Public Safety v. Wiehle,* 287 N.W.2d 416, 419 (Minn.1979). While, of course, it would have been better if the 18 and over provision had not been read, this added sentence was not so confusing or incorrect so as to render the advisory illegal. *Connor v. Commissioner of Public Safety,* 386 N.W.2d 242, 245 (Minn.Ct.App. 1986).

■ Appellant also argues that other comments which the officer made to him were confusing and misleading. The officer told him he might lose his license until he was 18 if he refused testing; he also attempted to reassure appellant by telling him that juvenile authorities would handle his case, and he might get a lenient judge. Appellant argues that the officer's statements directly circumvent the primary purpose behind the implied consent advisory: to inform a driver of the serious consequences of his decision. *Tyler v. Commissioner of Public Safety,* 368 N.W.2d 275, 280 (Minn.1985); *Connor,* 386 N.W.2d at 245. He contends that the officer specifically gave appellant the impression that his license revocation period might be reduced by a lenient judge, which he asserts falsely represents the law and is very misleading.

In addressing this issue, the trial court found that appellant offered no evidence to show that he in fact was confused by Duerksen's explanation of the ramifications of the testing decision, and the court could not hold the officer's statements were so confusing as to be inherently misleading. Furthermore, because appellant was under the age of 17, the court noted that for implied consent purposes it would have made no difference if appellant had refused testing or if he had tested and failed; in either event, his driving privileges would be revoked until he reached age 18. Minn.Stat. § 169.123, subd. 4.

"The advisory is not designed to persuade a driver not to take a test; rather, it is aimed at letting a driver know the serious consequences of his refusal to take a test." *Tyler,* 368 N.W.2d at 280. The legislature intended that a driver's license be revoked only if the officers comply with the provisions of the implied consent law. *Id.* at 281. In *Tyler,* despite the fact that the driver took rather than refused the test, because there was "no intent to comply, attempt to comply or compliance with the implied consent law," the court determined that the results of the test could not properly be used as a basis for revocation. *Id.*

■ In contrast, appellant was given the advisory, in compliance with the implied consent law. *See Tyler,* 368 N.W.2d at 281. The trial court found no showing of confusion from the officer's subsequent discussion. We are not persuaded that the officer's comments confused appellant or resulted in improper advice as to the serious consequences of refusal. We affirm the trial court's decision to sustain the revocation of the driver's license.

■ 2. Appellant also argues that the trial court erred in denying his motion to reopen the case, in order to present his testimony that he was confused regarding the consequences of taking or refusing the test. "A decision of whether to allow a party to reopen rests within the sound discretion of the trial court, and will not be disturbed absent a clear abuse of discretion." *Montpetit v. Commissioner of Public Safety,* 392 N.W.2d 663, 665 (Minn.Ct. App.1986). The trial court denied the mo-

tion and we do not find an abuse of discretion.

## DECISION

The trial court's orders sustaining the revocation and denying the motion to reopen are affirmed.