**Pamela Sue HEUTON, Petitioner, Appellant,**

v.

**COMMISSIONER OF PUBLIC SAFETY, Respondent.**

**No. C3–95–1129.**

Court of Appeals of Minnesota.

Dec. 26, 1995.

Jeffrey B. Ring, Jeffrey B. Ring & Associates, Minneapolis, for appellant.

Hubert H. Humphrey, III, Attorney General, Nancy J. Bode, Assistant Attorney General, St. Paul, for respondent.

Considered and decided by SCHUMACHER, P.J., and HUSPENI and WILLIS, JJ.

## OPINION

HUSPENI, Judge.

Appellant Pamela Sue Heuton seeks reversal of the trial court's decision sustaining the revocation of her driver's license under the implied consent law, Minn.Stat. § 169.123 (1994). On appeal, Heuton argues that (1) the officer lacked probable cause to invoke the implied consent law, and (2) the Commissioner did not prove that Heuton was incapable of refusing the blood test. We affirm.

## FACTS

On September 21, 1994, Daniel Kuhl heard the screech of tires and a horn while he was working in his garden. Because the horn continued to blow, Kuhl went to investigate. He discovered Heuton's badly damaged car upside down leaning against some trees. He was soon joined by another man, and the two discovered what they at first thought was a rag doll lying on the ground. They were, in fact, observing Heuton face down, legs spread, with one arm on her back. She did not respond to the questioning of the men and appeared to be unconscious. Kuhl covered her with a blanket and she appeared to regain consciousness. When asked if there were others in the car with her, she groaned something unintelligible. Police were summoned and arrived in 5–10 minutes.

At approximately 4:34 p.m., Scott County Deputy Robert Mulvehill arrived at the scene of the accident. Deputy Mulvehill observed tire marks on the pavement leading onto the shoulder of the road, then the marks returned across to the other side of the road and onto the shoulder. The accident occurred on a sharp curve on a dry, clear day. Heuton's car was about 150 feet off the road. The vehicle's sun roof and front window were broken, and it was leaking gasoline.

Deputy Mulvehill observed Heuton semiconscious lying face down. When asked if there were any other passengers, Heuton said no. Heuton was incapable of responding to the officer's other questions. She complained of pain repeatedly. Heuton was identified as the owner of the vehicle through the vehicle's registration.

A paramedic at the scene informed Deputy Mulvehill and Sergeant Mike Bush that he detected the odor of alcohol coming from Heuton. Sergeant Bush ordered that an alcohol test be given to Heuton. At approximately 5:00 p.m., Shakopee Police Officer Brian Clark arrived at the hospital with a blood test kit and an implied consent form. Officer Clark was denied permission to see Heuton. A medical technician took a sample of Heuton's blood at 5:18 p.m., without reading Heuton the implied consent form.

## ISSUES

1. Did the officer have probable cause to believe Heuton had been driving while under the influence of alcohol?

2. Under the particular facts of this case, was Heuton incapable of refusing the blood test due to her injuries?

## ANALYSIS

1. The Minnesota implied consent law provides that a person given driving privileges in Minnesota consents to have a blood, breath, or urine test to determine the presence of alcohol. Minn.Stat. § 169.123, subd. 2(a) (1994). A test may be required if the officer has probable cause to believe that the person was driving while under the influence of alcohol and one of the following conditions exist: (1) the person has been lawfully placed under arrest for DWI, (2) the person has been involved in an accident resulting in property damage or injury, or (3) the person has refused or failed a screening test. *Id.*

Heuton asserts that the officer did not have probable cause because the only indicia of intoxication was the purported odor of alcohol and that this standing alone does not constitute probable cause to invoke the implied consent law. We disagree.

 In reviewing a probable cause determination, this court does not review the determination de novo; rather the court looks to see if the officer "had a substantial basis for concluding that probable cause existed at the time of invoking the implied consent law." *State v. Olson,* 342 N.W.2d 638, 641 (Minn.App.1984) (citing *Jones v. United States,* 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960)). An officer needs only one objective indication of intoxication to constitute probable cause to believe a person is under the influence. *Holtz v. Commissioner of Pub. Safety,* 340 N.W.2d 363, 365 (Minn. App.1983) (making clear that even single objective indication may be sufficient depending on circumstances); *see Martin v. Commissioner of Pub. Safety,* 353 N.W.2d 202 (Minn. App.1984) (reiterating that "it is fundamental that each case must be decided on its own facts and circumstances").

Here, the officer relied on the paramedic's statement that he detected alcohol on Heuton's breath. Additionally, there was no apparent reason why such a serious one-car accident would have occurred on a clear, dry day independent of driver impairment. *See Eggersgluss v. Commissioner of Pub. Safety,* 393 N.W.2d 183, 185 (Minn.1986) (examining totality of circumstances, including passenger reported drinking and one-car rollover at 4:30 a.m., to conclude probable cause existed); *Stiles v. Commissioner of Pub. Safety,* 369 N.W.2d 347, 351 (Minn.App.1985) (finding that probable cause for invoking the implied consent law existed and noting as one of the facts supporting probable cause that a serious single-vehicle accident occurred in which the driver lost control of his motorcycle for no immediately apparent reason).

 Based on the totality of the circumstances confronting the peace officer, we conclude that there was probable cause to find that Heuton was under the influence of alcohol in violation of state law.

2. Heuton contends that the Commissioner did not carry his burden of proving by a preponderance of the evidence that she was incapacitated and, therefore, that the trial court erred in finding that she was incapable of consenting to a blood test. We disagree.

Minn.Stat. § 169.123, subd. 2c provides:

A person who is unconscious or who is otherwise in a condition rendering the person incapable of refusal is deemed not to have withdrawn the consent provided by subdivision 2 and the test may be given.

A finding of incapacity depends on a record of circumstances such that the reviewing court "is left with a 'firm conviction' that the driver was incapable of making a reasoned refusal." *Thornton v. Commissioner of Pub. Safety,* 384 N.W.2d 606, 608 (Minn.App.1986) (quoting *Stiles,* 369 N.W.2d at 352). We are left with that firm conviction in this case and conclude that the trial court should be affirmed.

We must evaluate, however, the trial court's reliance on Officer Clark's hearsay testimony regarding Heuton's condition. We note initially that nothing in the record indicates that Officer Clark had any personal knowledge of Heuton's condition. He was not at the scene, and there is no evidence that he talked to officers at the scene. Further, no notice was given to Heuton pursuant to Minn.R.Evid. 803(24) or 804(b)(5) regarding the anticipated use of hearsay testimony. Officer Clark testified that emergency room staff told him that the doctor would not allow him to see Heuton, and that a paramedic told him that Heuton's injuries were life threatening. Based on this information, Officer Clark concluded that Heuton was incapable of consenting to a blood test and invoked the implied consent law.

The trial court, after observing that pursuant to Minn.Stat. § 169.123 implied consent hearings may be conducted in the same manner as pretrial motion hearings in criminal prosecution under Minn.Stat. § 169.121, stated:

Minn.R.Crim.P. 11.03, dealing with pretrial motions, states in relevant part: "A finding by the court of probable cause shall be based upon the entire record including re-

liable hearsay in whole or part." The Court considers the statements made by the doctor [1] to Officer Clark to be reliable hearsay. The doctor was in the best position to determine if [Heuton] was fit to be questioned. He was charged with the care of [Heuton's] life, he more than anyone else in the hospital, including the officer, knew best whether [Heuton] was in any condition to submit to questioning. The doctor had first hand information on [Heuton's] condition and this information was quickly told to the officer when he requested access. There is no reason that the doctor would lie or misreport [Heuton's] condition to the officer. The Court must conclude that the doctor's statements were reliable hearsay. From this information, Officer Clark had sufficient reason to conclude that [Heuton] was in a condition which rendered her incapable of refusal.

On appeal, Heuton contends that Officer Clark's statements regarding her condition are inadmissible hearsay, and that the trial court erred in considering this testimony. Heuton's argument on this point is persuasive. While reliable hearsay is admissible on the issue of probable cause, the statements regarding Heuton's incapacity are not offered to establish probable cause; they are offered to assist the Commissioner in proving by a preponderance of the evidence that Heuton was incapable of refusal.[2]

Neither can we accept the state's argument that the statements of emergency room personnel regarding Heuton's condition were not offered to prove the truth of the matter asserted and that, therefore, the challenged testimony is non-hearsay under the "state of mind" exception set forth in rule 803(3). The statements of the medical personnel clearly addressed one of the facts that the Commissioner was required to prove by a preponderance of the evidence, to-wit, Heuton's incapacity to refuse testing.

■ Despite our concerns regarding the testimony on which the trial court relied in

its decision, we nonetheless conclude that the trial court's decision was correct. We believe the Commissioner carried his burden of proving incapacity through presentation of testimony other than that of Officer Clark. Kuhl testified to Heuton's nonresponsive condition at the scene. Deputy Mulvehill testified that Heuton was semiconscious and incapable of answering questions. It was less than one-half hour later that Officer Clark was required to make the determination regarding Heuton's capacity to refuse testing. The testimony of witnesses other than Officer Clark, we believe, is sufficient to permit the trial court to find by a preponderance of the evidence that Heuton, in fact, lacked the capacity to refuse.

Heuton cites the substantial body of case law regarding capacity to refuse and argues that the officer must make the factual determination as to capacity at the time the implied consent advisory is to be read. We recognize that the cases generally emphasize the need for the officer to determine the extent of the driver's injuries at the time the implied consent advisory is given. *See Tyler v. Commissioner of Pub. Safety,* 368 N.W.2d 275, 280 (Minn.1985); *State, Dept. of Pub. Safety v. Wiehle,* 287 N.W.2d 416, 418 (Minn. 1979); *State, Dept. of Pub. Safety v. Hauge,* 286 N.W.2d 727, 728 (Minn.1979); *Villeneuve v. Commissioner of Pub. Safety,* 417 N.W.2d 304, 305–06 (Minn.App.1988); *Douglas v. Commissioner of Pub. Safety,* 385 N.W.2d 850, 853 (Minn.App.1986), *review denied* (Minn. June 19, 1986); *State v. Stransky,* 384 N.W.2d 612, 614 (Minn.App.1986); *Thornton,* 384 N.W.2d at 606, 608; *Stiles,* 369 N.W.2d at 351.

We recognize also, however, that the facts of this case are distinguishable from those in the cases cited by Heuton and that the posture of this case is nearly a direct opposite of that in most of the cases upon which Heuton relies. In four of the cases relied on by Heuton, the driver refused the test, the officer did not order a test, and the driver later

---

1. Testimony of Officer Clark indicates he spoke with emergency room staff and a paramedic. The identification made by the court in this context is not important.

2. At the hearing the trial court acknowledged that these statements did not pertain to the issue of probable cause, stating "You are beyond the issue of probable cause for which hearsay is admissible."

challenged the license revocation, claiming that he or she was too seriously injured to be capable of refusing, that the officer should have ordered a test, and that the consequences that result from refusal should not ensue. *Villeneuve,* 417 N.W.2d at 305; *Douglas,* 385 N.W.2d at 850; *Thornton,* 384 N.W.2d at 607; *Stiles,* 369 N.W.2d at 351. In *Tyler,* there was conflicting testimony as to whether Tyler took the test voluntarily; no argument was made that Tyler was incapable of consenting. 368 N.W.2d at 280. In *Wiehle,* the driver was unconscious and thus clearly incapable of consenting. 287 N.W.2d at 418. In *Hauge,* the driver agreed to take the test and then argued that he was incapable of understanding his rights under the implied consent law because of the accident and ensuing medical treatment. 286 N.W.2d at 728. In *Stransky,* this court held that blood test results were admissible in a DWI prosecution even though the implied consent advisory had not been read where the police officer believed the driver to be unconscious. 384 N.W.2d at 614–15. Here, the officer determined that the driver was incapacitated and ordered a blood test and now the driver argues that she was capable of refusing the test. None of the above cases involve a similar fact pattern except the *Stransky* case which reached a result similar to that reached by the trial court in this case but involved a DWI prosecution rather than a license revocation proceeding.

We believe that Officer Clark, in ordering the test, heeded the caution expressed in *Douglas,* regarding invocation of Minn.Stat. § 169.123, subd. 2c:

> We recognize that ultimately the decision to invoke or not to invoke [the statute] must be made by a peace officer upon consideration of subjective criteria and often under conditions of rapidly changing circumstances. Those subjective decisions, made in good faith, are often scrutinized in subsequent legal proceedings. It is impossible to fashion infallible guidelines. However, when, as here, the driver is receiving a multitude of emergency room treatment procedures necessitated by extensive and traumatic injury, the officer must seriously consider the applicability of subdivision 2c to the circumstances at hand.

*Douglas,* 385 N.W.2d at 853–54.

Heuton's challenge to the invocation of the statute and the order to test arises from the fact that Officer Clark had no independent knowledge of Heuton's condition. We believe, however, that lack of independent knowledge on the part of Officer Clark should not be fatal. First, emergency room personnel prevented Officer Clark from gaining the personal knowledge that he sought. Second, Deputy Mulvehill, who had recently observed Heuton's condition, did testify regarding that condition.

We nonetheless acknowledge the potential dilemma for all concerned when a situation such as the one in this case arises. Unquestionably, it would be disruptive, and possibly detrimental to the injured person, for one in Officer Clark's position to insist on personally assessing the patient's condition. The driver nonetheless has a right to insist that competent evidence be presented to show incapacity. The Commissioner, we submit, can in most cases prevent a potential dilemma from becoming an actual one. By preparing for the implied consent hearing mindful of the burden of production of competent evidence, the Commissioner will assure that all necessary witnesses are available to testify or that proper notification is given under the rules of evidence to enable reliable hearsay to be received in evidence. In this case, we conclude that the trial court properly determined that the Commissioner sustained the burden placed on him.

## DECISION

The evidence is sufficient to sustain the trial court's finding that the officer had probable cause to believe Heuton had been driving under the influence of alcohol. Under the particular facts of this case, the Commissioner carried his burden of proving by a preponderance of evidence that Heuton was incapable of refusing a test.

**Affirmed.**