2012 ND 172

Tim CLAUSNITZER, Plaintiff
and Appellant

v.

TESORO REFINING AND
MARKETING COMPANY,
Defendant and Appellee.

No. 20120107.

Supreme Court of North Dakota.

Aug. 20, 2012.

■■■■■■■■■■■■■■

Sean T. Foss (argued) and Timothy M. O'Keeffe (appeared), Fargo, N.D., for plaintiff and appellant.

Clark J. Bormann (argued) and Sophie Y. Morgan (appeared), Bismarck, N.D., for defendant and appellee.

CROTHERS, Justice.

[¶ 1] Tim Clausnitzer appeals from a summary judgment dismissing his lawsuit against Tesoro Refinery and Marketing Company alleging lawful-activity discrimination under the North Dakota Human Rights Act, N.D.C.C. ch. 14–02.4. We affirm, concluding Clausnitzer failed to make a prima facie showing that he was a member of a protected class under the Act when Tesoro terminated his employment.

I

[¶ 2] Clausnitzer was employed as manager of maintenance at Tesoro's Mandan refinery. On March 24, 2009, Clausnitzer drove his two-wheel drive personal vehicle to work from his home in Bismarck. During the morning, Clausnitzer took Ativan, an anti-anxiety pill prescribed by his doctor. A winter storm developed that morning. Clausnitzer took a late lunch break and drove a four-wheel drive company vehicle, marked "Tesoro," to Bismarck. The purpose of the trip was to locate a printer for a Tesoro employee and to run some personal errands. After looking at printers, Clausnitzer stopped at his girlfriend's house, but left because she was not home. He decided to return to the refinery and, while driving back, Clausnitzer was involved in a minor motor vehicle accident. A Bismarck police officer responded, citing Clausnitzer with careless driving on slippery roads. Clausnitzer called Tesoro's human resources manager to inform him about the accident.

[¶ 3] Clausnitzer took the remainder of the afternoon off from work and drove home, where he drank a vodka tonic. He then drove the Tesoro vehicle to his girlfriend's house. Clausnitzer fell on the steps, and his girlfriend told him to leave. Clausnitzer's girlfriend called the police, gave them his license plate number and informed them she believed Clausnitzer had been drinking and might harm himself. The same police officer who earlier had investigated the accident pulled Clausnitzer over, asked him if he had been drinking and gave him a breath alcohol test. The test indicated Clausnitzer had a blood alcohol content of .058 percent, which was lower than the presumptive level of .08 percent for driving under the influence of alcohol under N.D.C.C. § 39–08–01(1)(a), but was higher than the .04 percent limit for driving company vehicles imposed by Tesoro's personnel policies. The police officer allowed Clausnitzer to leave the scene of the stop but called Tesoro and informed its human resources manager that Clausnitzer earlier had been involved in an accident and later had been drinking while operating a company vehicle. The officer told the human resources manager the result of the breath alcohol test and said, "[H]e just wanted the company to know." Tesoro eventually gave Clausnitzer the option of either retiring or being fired for violating the company's policy. Clausnitzer retired.

[¶ 4] Clausnitzer sued Tesoro, claiming lawful-activity discrimination under the Human Rights Act. Clausnitzer contended he was improperly terminated from employment for engaging in a lawful activity because he was under the presumptive limit for driving under the influence under

state law and was driving the Tesoro vehicle during off-duty hours when the incident leading to his termination occurred. Tesoro denied discriminating against Clausnitzer, arguing it terminated his employment because he violated the company's policy prohibiting driving a Tesoro vehicle with a blood alcohol content exceeding .04 percent.

[¶ 5] The district court granted Tesoro's motion for summary judgment dismissing the action, concluding Clausnitzer failed to establish a prima facie case of employment discrimination under the Human Rights Act. The court ruled Clausnitzer was on Tesoro's "premises" when he was pulled over in the company vehicle in Bismarck, based on a Tesoro personnel policy that defined "[c]ompany property or premises" as including "automobiles, trucks, [and] all other vehicles." The court further ruled Clausnitzer's actions conflicted with Tesoro's "essential business-related interests."

## II

[¶ 6] Clausnitzer argues the district court erred in granting summary judgment dismissal of his claim.

[¶ 7] Our standard of review for summary judgments is well-established:

"Summary judgment is a procedural device for the prompt resolution of a controversy on the merits without a trial if there are no genuine issues of material fact or inferences that can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law. A party moving for summary judgment has the burden of showing there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. In determining whether summary judgment was appropriately granted, we must view the evidence in the light most favorable to

the party opposing the motion, and that party will be given the benefit of all favorable inferences which can reasonably be drawn from the record. On appeal, this Court decides whether the information available to the district court precluded the existence of a genuine issue of material fact and entitled the moving party to judgment as a matter of law. Whether the district court properly granted summary judgment is a question of law which we review de novo on the entire record."

*Richard v. Washburn Pub. Sch.*, 2011 ND 240, ¶ 9, 809 N.W.2d 288 (quoting *Loper v. Adams*, 2011 ND 68, ¶ 19, 795 N.W.2d 899).

[¶ 8] "The Human Rights Act authorizes a person claiming to be aggrieved by an unlawful discriminatory practice to bring an action for damages in the district court." *Spratt v. MDU Res. Grp., Inc.*, 2011 ND 94, ¶ 9, 797 N.W.2d 328; *see also* N.D.C.C. § 14–02.4–19(2). The plaintiff bears the initial burden of "demonstrating a prima facie case under the modified *McDonnell Douglas* test." *Spratt*, at ¶ 16; *see generally McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

"To establish a prima facie case of discrimination under the North Dakota Human Rights Act, a plaintiff must prove: (1) membership in a protected class under the Act; (2) satisfactory performance of the duties of the position; (3) an adverse employment decision; and (4) others not in the protected class were treated more favorably."

*Jacob v. Nodak Mut. Ins. Co.*, 2005 ND 56, ¶ 13, 693 N.W.2d 604. If the plaintiff fails to present a prima facie case, the burden-shifting rule of *McDonnell Douglas* does not come into play. *Heng v. Rotech Med. Corp.*, 2004 ND 204, ¶ 37, 688 N.W.2d 389.

[¶ 9] The district court concluded Clausnitzer failed under the first element to make a prima facie showing he was a member of a protected class under the Human Rights Act, and did not address the remaining elements. The applicable protected class in this case is "participation in lawful activity off the employer's premises during nonworking hours which is not in direct conflict with the essential business-related interests of the employer." N.D.C.C. § 14–02.4–03; *see also Ramey v. Twin Butte Sch. Dist.*, 2003 ND 87, ¶ 12, 662 N.W.2d 270. The issue is whether Clausnitzer raised a genuine issue of material fact that he was a member of this protected class. *See Spratt*, 2011 ND 94, ¶ 16, 797 N.W.2d 328.

[¶ 10] The district court determined Clausnitzer's consumption of alcohol was a "lawful activity" and he had raised a genuine issue of material fact that the incident occurred during "nonworking hours." However, the court determined Clausnitzer failed to raise a genuine issue of material fact that the incident occurred off Tesoro's "premises" and that his actions did not conflict with Tesoro's "essential business-related interests." We need not address the "lawful activity," "nonworking hours" and "premises" issues because the district court correctly ruled Clausnitzer failed to raise a genuine issue of material fact that his actions did not conflict with Tesoro's "essential business-related interests."

[¶ 11] This Court has not interpreted under similar factual circumstances the phrase "essential business-related interests of the employer" used in N.D.C.C. § 14–02.4–03 and elsewhere in the Human Rights Act. *See* N.D.C.C. §§ 14–02.4–01, 14–02.4–02(6), 14–02.4–06 and 14–02.4–08. The parties have not cited, and we have not found, any caselaw from other jurisdictions interpreting this phrase in the context of alleged human rights acts violations. Each party argues, however, that *Hougum v. Valley Mem'l Homes*, 1998 ND 24, 574 N.W.2d 812, and *Fatland v. Quaker State Corp.*, 62 F.3d 1070 (8th Cir.1995), support their positions.

[¶ 12] *Fatland*, 62 F.3d at 1073 n. 2, involved a federal court interpretation of the Human Rights Act under the law before the effective date of a 1993 amendment to N.D.C.C. § 14–02.4–03 which added the phrase, "which is not in direct conflict with the essential business-related interests of the employer." 1993 N.D. Sess. Laws ch. 140, § 2. An employee worked as a sales representative for his employer and opened a "fast lube business." *Fatland*, at 1071. The employer had a policy prohibiting employees from having conflict of interest situations with the company. *Id.* The employee told a customer of the employer about his new fast lube business, and the employer terminated his employment based on the conflict of interest policy because he had become a competitor of the employer's customers. *Id.* at 1072. The employee sued the employer claiming, among other things, that his termination violated the Human Rights Act. *Id.* The court interpreted N.D.C.C. § 14–02.4–08, which declared it was not lawful-activity discrimination to terminate employment " 'if that participation is contrary to a bona fide occupational qualification that reasonably and rationally relates to employment activities and the responsibilities of a particular employee or group of employees, rather than to all employees of that employer.' " *Fatland*, at 1072. The court affirmed summary judgment dismissing the employee's claim, ruling as a matter of law:

"Prohibiting employees such as Fatland from operating off-hours businesses that would benefit from confidential informa-

tion that the employees' positions within the company would enable them to secure from competitors, resulting in resentment towards, and termination of business with, the employer is a bona fide occupational qualification that is reasonably and rationally related to a particular employee or group of employees within the meaning of section 14–02.4–08. Thus, Quaker State did not run afoul of section 14–02.4–03 when it terminated Fatland's employment."

*Id.* at 1073 (footnote omitted).

[¶ 13]   In *Hougum,* 1998 ND 24, ¶¶ 2–5, 574 N.W.2d 812, the employer terminated an employee after he was arrested for masturbating in an enclosed toilet stall in a store's public restroom.   The disorderly conduct charge against the employee was eventually dismissed with prejudice.   *Id.* at ¶¶ 4, 42.   The employee sued the employer claiming, among other things, that he was terminated in violation of the Human Rights Act. *Id.* at ¶ 6. This Court reversed summary judgment dismissing the employee's claim, declining "to hold, as a matter of law, [the employer] is entitled to prevail on its claim [the employee's] activity was in direct conflict with its essential business-related interests." *Id.* at ¶ 45.   In the decision, the Court noted the legislative history underlying the lawful-activity discrimination provisions:

> "The broad provisions precluding employer discrimination for lawful activity off the employer's premises during non-working hours were initially enacted in 1991 to expand the law prohibiting employment discrimination and preclude employers from inquiring into an employee's non-work conduct, including an employee's weight and smoking, marital, or sexual habits.   1991 N.D. Sess. Laws Ch. 142, February 4, 1991 Testimony of John Olson on S.B. No. 2498 before Senate Committee on Industry, Business

and Labor.   The 1991 amendments included the language allowing an employer to discharge an employee for lawful activity if the activity was contrary to a bona fide occupational qualification that reasonably and rationally related to employment activities and the responsibilities of a particular employee.  *Id.*

> "In 1993, the Legislature enacted language prohibiting discrimination for lawful activity 'which is not in direct conflict with the essential business-related interests of the employer' to clarify possible conflicts between the protected status of lawful activity off the employer's premises and the employment-at-will doctrine. *See* 1993 N.D. Sess. Laws Ch. 140, Prepared Testimony of Robert Feder on S.B. No. 2367.   The 1993 amendments afford a compromise between the employment at-will doctrine and the protected status of lawful activity off the employer's premises to 'provide an employer with some assurance that the employee's conduct is not deleterious to the well-being of the employer's mission.' *Id. See also Fatland,* 62 F.3d at 1073, n. 2 (affirming summary judgment for employer under 1991 law because prohibiting employees from operating off-hours business that conflicted with employer's business was bona fide occupational qualification that was reasonably and rationally related to employment activities)."

*Hougum,* at ¶¶ 40–41.

[¶ 14]   Another North Dakota case provides some helpful analogies.   In *Olson v. Job Serv. North Dakota,* 379 N.W.2d 285, 286 (N.D.1985), an employee allegedly signed an agreement with her employer "to refrain from the consumption of alcohol, both on and off the job."   The employer terminated the employee after learning she had been involved in a car accident with her own vehicle after she had "drank

approximately two beers" during nonworking hours, and the employee was subsequently denied unemployment benefits. *Id.* This Court reversed, ruling as a matter of law that the employee's off-duty consumption of alcohol did not constitute disqualifying "misconduct," which is defined in part as "wilful or wanton disregard of an employer's interests." *Id.* at 287–88 (quotations omitted).

> "In the instant case, [the employee's] off-duty consumption of alcohol is not shown to pose a threat to [the employer's] business interests. We do not see a reasonable relationship between the off-duty rule and the employer's interests. We cannot conclude that [the employee's] conduct constitutes misconduct."

*Id.* at 288.

[¶ 15] In *Olson*, 379 N.W.2d at 288, the Court distinguished the Wisconsin Supreme Court's decision in *Gregory v. Anderson*, 14 Wis.2d 130, 109 N.W.2d 675 (1961), where the court ruled an employee had committed disqualifying misconduct by drinking alcohol off duty after agreeing to not consume alcohol either on or off duty. The Court in *Olson* noted:

> "The reason for the *Gregory* employment agreement was that the employee's job required driving a delivery truck to local taverns and the employer had to maintain insurance on the trucks. The insurance was difficult to obtain partially because the delivery trucks serviced taverns and the insurer was hesitant to insure with the increased risk of the drivers' consuming alcoholic beverages during duty hours or shortly thereafter. The insurer testified that the decisive factor in inducing the insurance company to accept the risk of insuring the employer was the employer's

rule prohibiting employee consumption of alcohol."

*Olson*, 379 N.W.2d at 288.

[¶ 16] Although these decisions are not directly on point, they do provide some informative background for considering the issue in this case.

[¶ 17] "In interpreting a statute, we look at the plain language of the statute and give each word its plain and ordinary meaning unless a contrary intention plainly appears." *Interest of T.H.*, 2012 ND 38, ¶ 22, 812 N.W.2d 373; *see also* N.D.C.C. § 1–02–02. The word "essential" has been defined as "[i]ndispensably necessary; important in the highest degree; requisite. That which is required for the continued existence of a thing." *Black's Law Dictionary* 546 (6th ed.1990); *see also Merriam–Webster's Collegiate Dictionary* 427 (11th ed.2005) (defining "essential" as "of the utmost importance: basic, indispensable, necessary"). Thus, Clausnitzer must raise a genuine issue of material fact that his actions in driving a company vehicle with a blood alcohol level above the .04 limit imposed by Tesoro's policies did not conflict with an indispensable or necessary business-related interest of Tesoro.

[¶ 18] In ruling Clausnitzer's conduct conflicted with Tesoro's essential business-related interests, the district court reasoned:

> "Tesoro has a policy in place that prohibits employees from drinking and driving Tesoro vehicles. This policy protects Tesoro from incurring negative economic consequences, such as being subjected to legal liability, much the same way the policy at issue in *Fatland* protected Quaker State's economic interests.
>
> "In this case, Clausnitzer argues he is being discriminated against because he

lawfully drank and drove, while on vacation. Tesoro's policy does not prohibit Clausnitzer's lawful conduct. It prohibits Clausnitzer from participating in that lawful activity while using Tesoro property in order to avoid negative economic implications, such as damage to Tesoro property or public image, or the previously mentioned legal ramifications.

"Clausnitzer's activity having consumed alcohol before driving a Tesoro vehicle directly conflicts with Tesoro's essential business-related interests."

[¶ 19] Clausnitzer argues his conduct was not contrary to Tesoro's essential business-related interests because a company official's deposition testimony indicates "Tesoro tolerates employees driving company vehicles after consuming alcohol." However, this testimony is unremarkable because Tesoro's policy expressly allows employees with blood alcohol levels up to .04 percent to drive company vehicles. Clausnitzer presented no evidence indicating Tesoro tolerates employees driving company vehicles with blood alcohol levels above the policy limit.

[¶ 20] Clausnitzer argues the district court's decision "weaken[s] state law against lawful-activity discrimination, as employers could prohibit any and all legal activities that create the theoretical potential for economic consequences or increased legal liability." He contends the court's decision should be overturned to "provide clear guidance that 'essential business-related interests' cannot be intangible, generic concerns applicable to any and all employers." He asserts Tesoro was required to "submit evidence regarding its potential for legal liability, damage to property, or damage to public image caused by Clausnitzer's legal actions." Clausnitzer's arguments would be more persuasive if he had been driving his own vehicle when the incident occurred. The

arguments lose their persuasiveness when considering Clausnitzer was driving a marked company vehicle with a blood alcohol level of .058 percent in violation of Tesoro's policy.

[¶ 21] First, Clausnitzer's repeated claims that he was engaged in a "legal activity" when the incident occurred and that Tesoro's policy improperly prohibits "legal activity" incorrectly suggests anyone driving a vehicle with a blood alcohol content of less than the presumptive limit of .08 percent under N.D.C.C. § 39–08–01(1)(a) is engaged in a "legal activity." "However, a breathalyzer test result showing a defendant to be above the presumptive level of intoxication is not a prerequisite to a finding that the defendant was under the influence of intoxicating liquor." *State v. Engebretson*, 326 N.W.2d 212, 215 n. 2 (N.D.1982), *overruled on other grounds, State v. Himmerick*, 499 N.W.2d 568, 571–72 (N.D.1993); *see also* N.D.C.C. § 39–08–01(1)(b), (c) and (d) and § 39–20–07 (presumptions and interpretations of chemical tests).

[¶ 22] Second, it is beyond question that the strong societal "public policy of preventing people from drinking and driving is embodied in the case law, the applicable regulations, statutory law, and pure common sense." *Amalgamated Meat Cutters and Butcher Workmen of North America AFL–CIO, Local Union 540 v. Great W. Food Co.*, 712 F.2d 122, 125 (5th Cir.1983). Tesoro's policies specifically define as one of their purposes the "protect[ion of] Company property and assets." Goodwill is certainly a company "asset." *See, e.g., Hawkins Chem., Inc. v. McNea*, 319 N.W.2d 152, 154 (N.D.1982). Common sense informs us that employees who drive marked company vehicles with moderate to high blood alcohol levels pose potential legal and economic liability concerns for the employer and undermine the employ-

er's reputation and the public's trust and confidence in the employer. The potential adverse effect on Tesoro's reputation is demonstrated by the record. Although the police officer here determined he did not have probable cause to arrest Clausnitzer, the officer nevertheless "felt an obligation to inform" Tesoro about the incident. Curious passers-by who observed administration of the blood alcohol test to Clausnitzer also could have done so and told others about what they had witnessed. Clausnitzer's actions conflicted with Tesoro's essential business-related interests.

[¶ 23] Clausnitzer failed to raise a genuine issue of material fact that his actions did not conflict with Tesoro's essential business-related interests. Consequently, he has not shown that he is a member of a protected class under the Human Rights Act. We conclude the district court did not err in dismissing Clausnitzer's lawsuit.

### III

[¶ 24] We do not address other arguments raised because they either are unnecessary to the decision or are without merit. The summary judgment is affirmed.

[¶ 25] DANIEL D. NARUM, D.J., MARY MUEHLEN MARING, and CAROL RONNING KAPSNER, JJ., concur.

GERALD W. VANDE WALLE, C.J., concurs in the result.

[¶ 26] The Honorable DANIEL D. NARUM, D.J., sitting in place of SANDSTROM, J., disqualified.