2014 ND 48

**Joseph Daniel POTRATZ, Appellant**

v.

**NORTH DAKOTA DEPARTMENT OF TRANSPORTATION, Appellee.**

No. 20130322.

Supreme Court of North Dakota.

March 11, 2014.

Michael R. Hoffman, Bismarck, N.D., for appellant.

Michael T. Pitcher, Assistant Attorney General, Office of Attorney General, Bismarck, N.D., for appellee.

McEVERS, Justice.

[¶ 1]   Joseph Daniel Potratz appeals the district court's judgment affirming the administrative hearing officer's decision suspending his driving privileges.   We affirm the district court judgment.

I

[¶ 2]   On February 17, 2013, Burleigh County Deputy Sheriff Danny Lemieux arrested Potratz for driving under the influence ("DUI") and, subsequently, issued a certified written report, the Report and Notice form, to suspend Potratz's driving privileges.   Potratz requested and received an administrative hearing, which occurred on March 15, 2013.

[¶ 3]   At the administrative hearing, the deputy testified to the following events. At approximately 1:17 a.m., on February 17, 2013, while patrolling northbound on Highway 83, the deputy followed a black Dodge Ram pickup truck after observing it straddling the left fog line.   The deputy later stopped the vehicle on a two lane road after observing it cross into the opposing traffic lane.   The deputy observed the driver, later identified as Potratz, had bloodshot, glossy, watery eyes;  an odor of an alcoholic beverage on his breath;  and admitted drinking.   The deputy conducted field tests on Potratz.   Potratz passed the one leg stand test but did not pass the horizontal gaze nystagmus test, or the walk and turn test.   The Alco–Sensor FST on-site screening test indicated a "0.101 percent breath alcohol content."   The deputy testified that he arrested Potratz for DUI and Potratz consented to an Intoxilyzer test, which revealed an alcohol concentration of .094 at 2:00 a.m.

[¶ 4]   At the administrative hearing, the Report and Notice form, the Intoxilyzer Test Record and Checklist, and the Drivers License Division Central Record for Potratz were received into evidence.   The

Report and Notice form provided the date at the top of the form noting the date of the occurrence, and again in the middle of the form certifying the issuance of a temporary license, but the date was not listed in the test results portion noting only the time the sample was obtained. The Report and Notice form listed the time of driving as 1:17 a.m., the time of arrest as 1:27 a.m., and the time of the test as 2:00 a.m. The Report and Notice form indicated the specimen was provided by "breath" and listed the test results as ".094% BRAC." The Intoxilyzer Test Record and Checklist listed the reported AC as "0.094" at 2:00 a.m. The Intoxilyzer Test Record and Checklist listed Potratz's weight as 180 pounds. The Drivers License Division Central Record listed Potratz's weight as 170 pounds.

[¶ 5] The administrative hearing officer concluded the deputy had reasonable grounds to believe Potratz had been driving under the influence and Potratz was properly tested after his arrest to determine his alcohol concentration within two hours of driving. On March 20, 2013, Potratz appealed the hearing officer's decision. The district court affirmed the hearing officer's decision. On October 16, 2013, Potratz appealed.

## II

[¶ 6] On appeal, Potratz argues (1) the director lacked authority to suspend his driving privileges because the Report and Notice form failed to state the date the breath specimen was obtained and, therefore, violated N.D.C.C. ch. 39–20; (2) the director lacked authority to suspend Potratz's driving privileges because the Report and Notice form failed to state a test result of an alcohol concentration of at least eight one-hundredths of one percent by weight and, therefore, violated N.D.C.C. ch. 39–20; and (3) a preponder-

ance of the evidence does not support that the Intoxilyzer machine was working properly because of the differing weights listed for Potratz in the Intoxilyzer Test Record and Checklist and the Drivers License Division Central Record.

[¶ 7] The Administrative Agency Practice Act governs this Court's review of an administrative decision to suspend a driver's license. N.D.C.C. ch. 28–32; *Pesanti v. N.D. Dep't of Transp.*, 2013 ND 210, ¶ 7, 839 N.W.2d 851. This Court reviews the administrative agency's decision when a district court's review of an administrative agency's decision is appealed. *Steinmeyer v. N.D. Dep't of Transp.*, 2009 ND 126, ¶ 8, 768 N.W.2d 491.

> The review is limited to the record before the administrative agency. We review the administrative hearing officer's decision and give deference to the administrative hearing officer's findings. We do not, however, make independent findings or substitute our judgment for that of the agency. Rather, we determine only whether a reasoning mind reasonably could have concluded the findings were supported by the weight of the evidence from the entire record. We defer to the hearing officer's opportunity to judge the credibility of witnesses.

*Pesanti*, at ¶ 7 (citations omitted). "This Court reviews questions of law de novo and gives deference to the Department's sound findings of fact." *Steinmeyer*, at ¶ 8. This Court reviews an administrative hearing officer's evidentiary rulings under the abuse of discretion standard. *Knudson v. Dir., N.D. Dep't of Transp.*, 530 N.W.2d 313, 317 (N.D.1995). This Court must affirm an administrative hearing officer's decision unless:

1.  The order is not in accordance with the law.

2. The order is in violation of the constitutional rights of the appellant.

3. The provisions of this chapter have not been complied with in the proceedings before the agency.

4. The rules or procedure of the agency have not afforded the appellant a fair hearing.

5. The findings of fact made by the agency are not supported by a preponderance of the evidence.

6. The conclusions of law and order of the agency are not supported by its findings of fact.

7. The findings of fact made by the agency do not sufficiently address the evidence presented to the agency by the appellant.

8. The conclusions of law and order of the agency do not sufficiently explain the agency's rationale for not adopting any contrary recommendations by a hearing officer or an administrative law judge.

N.D.C.C. § 28-32-46.

### III

[¶ 8] More specifically, Potratz argues (1) the director lacked authority to suspend his driving privileges because the Report and Notice form failed to include the date the breath specimen in the portion of the form indicating the time the test was obtained and, therefore, violated N.D.C.C. ch. 39-20; (2) the director lacked authority to suspend Potratz's driving privileges because the Report and Notice form failed to state a test result of an alcohol concentration of at least eight one-hundredths of one percent by weight because a percentage symbol and "BRAC" were included following the numerical test result of ".094" and, therefore, violated N.D.C.C. ch. 39-20; and (3) a preponderance of the evidence does not support that the Intoxilyzer machine was working prop-

erly because of the differing weights listed for Potratz in the Intoxilyzer Test Record and Checklist and the Drivers License Division Central Record.

### A. Notice and Report Form

[¶ 9] "The Department's authority to suspend a person's license is given by statute and is dependent upon the terms of the statute." *Aamodt v. N.D. Dep't of Transp.*, 2004 ND 134, ¶ 15, 682 N.W.2d 308. "The Department must meet the basic and mandatory provisions of the statute to have authority to suspend a person's driving privileges." *Id.* (citing *Schwind v. Dir., N.D. Dep't of Transp.*, 462 N.W.2d 147, 150 (N.D.1990)). "While the jurisdiction of an administrative agency is dependent upon the terms of a statute, these terms must be construed logically so as not to produce an absurd result." *Schwind*, at 150. "This Court has previously discussed whether certain provisions of N.D.C.C. § 39-20-03.1 are basic and mandatory provisions that require compliance before the Department is authorized to suspend a person's driving privileges." *Wampler v. N.D. Dep't of Transp.*, 2014 ND 24, ¶ 7.

[¶ 10] Under N.D.C.C. § 39-20-03.1, if a person's blood, breath, or urine test results show an alcohol concentration of eight one-hundredths of one percent by weight or more, the law enforcement officer must forward a certified written report to the director. This report must show:

[T]he officer had reasonable grounds to believe the individual had been driving ... while in violation of section 39-08-01, or equivalent ordinance, that the individual was lawfully arrested, that the individual was tested for alcohol concentration under this chapter, and that the results of the test show that the individual had an alcohol concentration of at

least eight one-hundredths of one percent by weight. . . .

N.D.C.C. § 39–20–03.1(4). "A properly completed report meeting the basic and mandatory provisions of the statute, along with the other matters required by the statute, is intended to give the Department the authority to suspend a driver's license and to provide a driver the means to know what the officer was relying on." *Wampler*, 2014 ND 24, ¶ 8. In *Jorgensen v. N.D. Dep't of Transp.*, 2005 ND 80, ¶ 13, 695 N.W.2d 212 (citations omitted), this Court reasoned:

Section 39–20–03.1, N.D.C.C., reflects a legislative intent to remove drunk drivers from the roads without slanting the law too much toward the Department's convenience. Section 39–20–05(1), N.D.C.C., gives a driver only a short time—ten days—after the issuance of a temporary operator's permit within which to request a hearing to challenge the suspension of his or her driving privileges. Thus, in determining whether to request a hearing, it is important that a driver facing the loss of driving privileges be able to quickly, conveniently, and certainly know what the officer is relying on. That information will be more quickly, conveniently, and certainly conveyed to the driver by inserting in the appropriate blank space on the report and notice form the results of the test than by giving the driver a copy of the analytical report of the analysis of the blood sample tested, which may well be confusing to one unacquainted with such documents. The legislature's intent will be best fulfilled by a bright-line requirement that the report and notice form contain the test result, as specified in N.D.C.C. § 39–20–03.1 [ (4) ].

▮ [¶ 11] Potratz argues that N.D.C.C. § 39–20–04.1(1) makes the test-

ing within two hours a basic and mandatory provision of N.D.C.C. ch. 39–20. An administrative sanction for driving while having an alcohol concentration of at least eight one-hundredths of one percent by weight is appropriate if the test is performed within two hours after driving. N.D.C.C. § 39–20–04.1(1). Potratz's argument is based on this Court's decisions in *Jorgensen* and *Aamodt*. In *Jorgensen*, this Court concluded that a Report and Notice form must include the test results. 2005 ND 80, 695 N.W.2d 212. In *Aamodt*, this Court concluded that a Report and Notice form must show the officer's reasonable grounds for believing the person was in actual physical control of a motor vehicle while under the influence of alcohol. 2004 ND 134, 682 N.W.2d 308.

[¶ 12] The Report and Notice form shows Potratz was driving at approximately 1:17 a.m., on February 17, 2013. It also shows, in a test results portion further down the form, that Potratz's breath specimen was obtained at 2:00 a.m. Below the portion of the form indicating the time the breath test was taken, the deputy certified that a temporary operators permit was issued on February 17, 2013. A third listing of the date within the short form would not make the Notice and Report form more clear. The Report and Notice form makes it clear what date the breath specimen was obtained and Potratz is not left guessing whether the breath specimen was obtained within two hours of his driving.

▮ [¶ 13] Potratz argues that use of "alcohol concentration of at least eight one-hundredths of one percent by weight" is a basic and mandatory provision of N.D.C.C. ch. 39–20 because it is included in N.D.C.C. §§ 39–20–03.1(4), 39–08–01, 39–20–04.1(1), and 39–20–05. Potratz, again, relies on this Court's decisions in *Jorgensen* and *Aamodt* that including the

test results and the officer's reasonable grounds for believing the person was in actual physical control of a motor vehicle while under the influence of alcohol were basic and mandatory provisions. 2005 ND 80, 695 N.W.2d 212; 2004 ND 134, 682 N.W.2d 308. This Court has, however, also held failure to strictly comply with the law does not necessarily deprive the Department of its authority under the law. In *Samdahl v. N.D. Dep't of Transp., Dir.,* there was a month delay between the testing of the blood and the notice of the intent to suspend Samdahl's driving privileges. 518 N.W.2d 714, 717 (N.D.1994). This Court recognized this delay "does not strictly comply with 'the letter of the law,'" but "we seek to avoid absurd results." *Id.* This Court held "[i]t would be an absurd result if, in the absence of any showing of harm or prejudice to Samdahl, we were to hold the officer's failure to strictly comply with the statute resulted in Samdahl retaining his driving privileges." *Id.* "Inclusion of the specific phrase 'by weight' on the law enforcement officer's certified written report to the director is not necessary to satisfy N.D.C.C. § 39–20–03.1." *Wampler,* 2014 ND 24, ¶ 10.

[¶ 14] Potratz claims that adding a "%" after the test result on the Notice and Report form would lead him to believe he had an alcohol concentration of .00094, which is under .08. This Court has used language referring to an alcohol concentration level as ".09 percent." *Aamodt,* 2004 ND 134, ¶ 3, 682 N.W.2d 308; *see also Clausnitzer v. Tesoro Refining and Marketing Co.,* 2012 ND 172, ¶ 3, 820 N.W.2d 665; *Schlosser v. N.D. Dep't of Transp.,* 2009 ND 173, ¶ 4, 775 N.W.2d 695; *Martin v. N.D. Dep't of Transp.,* 2009 ND 181, ¶ 3, 773 N.W.2d 190. The Department argues the term ".09 percent" is the same as ".09%." We agree that using this shorthand method of the "%" noted after the test result does not result in Potratz being

uninformed about what the officer relied on. The Notice and Report form is sufficiently clear to put Potratz and the Department on notice that the test result was of an alcohol concentration of at least eight one-hundredths of one percent. The Intoxilyzer Test Record and Checklist also sufficiently indicates the test result was of an alcohol concentration of at least eight one-hundredths of one percent. It would be absurd for a person to be charged with DUI if the test result evidenced an alcohol concentration of .0009 of one percent.

[¶ 15] Potratz claims that adding "BRAC" after the test result does not convey to him that the test result is by alcohol concentration. Potratz relies on *State v. Meyer,* 494 N.W.2d 364 (N.D. 1992), a case in which this Court recognized the distinction between an alcohol concentration and a blood-alcohol concentration. In *Meyer,* this Court explained the district court recognized the distinction when "expert testimony was needed to verify that alcohol concentration measured by the Intoxilyzer corresponds to blood-alcohol concentration" because it only measures alcohol concentration by breath and the legislature "failed to amend chapter 39–08 when chapter 39–20 was amended to make the terms consistent." *Id.* at 365. This Court concluded "the judgment of acquittal was based upon a lack of evidence as to a factual element of that crime" and could not be appealed. *Id.* at 366. The "BRAC" notation after the test result does not result in Potratz being uninformed about what the officer relied on. The Notice and Report form is clear that the specimen provided was a breath specimen.

[¶ 16] Potratz claim that failure to include "by weight" after the test result is an error that is not cured by the Intoxilyzer Test Record and Checklist. This Court recently determined that N.D.C.C. § 39–

20–03.1 does not require the inclusion of the phrase "by weight" on the Notice and Report form. *Wampler*, 2014 ND 24, ¶ 10.

[¶ 17] Potratz's Intoxilyzer test results indicated he had an alcohol concentration of 0.094 AC at 2:00 a.m., on February 17, 2013. The Report and Notice form includes a reference to N.D.C.C. ch. 39–20, which provides a reference to the requirements of the chapter. The deputy noted on the Report and Notice form that Potratz submitted to a breath test. In the test result blank of the Report and Notice form, the deputy wrote ".094% BRAC." These notations quickly, conveniently, and certainly informed Potratz what the officer had relied on and allowed him to make the decision whether to request a hearing. *See id.*

### B. Intoxilyzer Record and Checklist and Drivers License Division Central Record

[¶ 18] Potratz argues a preponderance of the evidence does not support that the Intoxilyzer machine was working properly because of the different weights listed for him in the Intoxilyzer Test Record and Checklist and the Drivers License Division Central Record. The Intoxilyzer Test Record and Checklist lists Potratz's weight as 180 pounds while the Drivers License Division Central Record lists his weight as 170 pounds, which Potratz claims proves the Intoxilyzer was not working properly and cannot be used to support the administrative hearing officer's decision. Potratz frames the argument as "lack of evidence," but it is essentially questioning the admissibility of the Intoxilyzer Test Record and Checklist. Potratz's reliance on *Ringsaker v. Dir., N.D. Dep't of Transp.*, 1999 ND 127, 596 N.W.2d 328, is misplaced.

[¶ 19] In *Ringsaker*, the Intoxilyzer test record failed to print a numeric date, but printed the date as "22/*0/17." *Id.* at ¶ 3. At the administrative hearing, the De-

partment failed to provide expert evidence showing the inaccurate date could not have affected the accuracy of the test result. *Id.* at ¶ 13. This Court held that, "[a]lthough the date is not the essential result of the test, when the date fails to print accurately, it raises questions regarding the trustworthiness of the entire test result." *Id.* at ¶ 10. Here, the Intoxilyzer Test Record and Checklist did not fail to print a numeric weight.

[¶ 20] "Fair administration of an Intoxilyzer test may be established by proof that the method approved by the State Toxicologist for conducting the test has been scrupulously followed. However, 'scrupulous' compliance does not mean 'hypertechnical' compliance." *Buchholtz v. Dir., N.D. Dep't of Transp.*, 2008 ND 53, ¶ 10, 746 N.W.2d 181. The legislature has provided for the ease of admitting records into evidence at administrative hearings by providing that certified copies of analytical reports may be admitted as prima facie evidence of their contents. N.D.C.C. §§ 39–20–05; 39–20–07(5). Once the Intoxilyzer Test Record and Checklist was admitted, the burden shifted to Potratz to present evidence that the deputy had not fairly administered the test. *See Thorsrud v. Dir., N.D. Dep't of Transp.*, 2012 ND 136, ¶ 10, 819 N.W.2d 483 ("[A] driver may rebut the Department's documentary foundation of fair administration by establishing either a deviation from approved procedures or a lack of fair administration despite compliance with approved procedures."); *Berger v. State Highway Comm'r*, 394 N.W.2d 678, 688 (N.D.1986) ("[T]o discredit the prima facie fairness and accuracy of a test, it [is] the driver's responsibility to produce evidence that the test was not fairly or adequately administered. . . . A driver must do more than raise the mere possibility of error.").

[¶ 21] The administrative hearing officer admitted Potratz's Intoxilyzer Test

Record and Checklist into evidence after the deputy testified he tested Potratz. The deputy testified he is acquainted with the state toxicologist's approved method for the Intoxilyzer and ran the test in accordance with the approved method. The Approved Method to Conduct Breath Tests with the Intoxilyzer 8000, submitted as Exhibit 8, explains that "[e]ntered information does not have any effect on the subject's reported breath alcohol concentration. Incorrect data in these areas will not cause the test to be invalid." and the list of information not affecting the test does include the subject's weight. The administrative hearing officer did not abuse her discretion in admitting the Intoxilyzer Test Record and Checklist when evidence was presented that the deputy had followed the approved method in administering the test. Potratz has not sufficiently rebutted the prima facie evidence that the weight listed on the Intoxilyzer Test Record and Checklist does not affect Potratz's reported alcohol concentration. Potratz merely raised the possibility of error.

## IV

[¶ 22] We conclude the administrative hearing officer's findings are supported by the weight of the evidence on the entire record, the conclusions are supported by the findings, and the order is in accordance with the law. Therefore, we affirm the district court judgment affirming the administrative hearing officer's decision to suspend Potratz's driving privileges.

[¶ 23] GERALD W. VANDE WALLE, C.J., DANIEL J. CROTHERS, DALE V. SANDSTROM, and CAROL RONNING KAPSNER, JJ., concur.