2014 ND 131

**Derek POKRZYWINSKI, Appellant**

v.

**DIRECTOR, NORTH DAKOTA DE-PARTMENT OF TRANSPOR-TATION, Appellee.**

No. 20140043.

Supreme Court of North Dakota.

June 24, 2014.

Robert J. Woods, Forest River, ND, for appellant.

Michael T. Pitcher, Assistant Attorney General, Office of Attorney General, Bismarck, ND, for appellee.

McEVERS, Justice.

[¶ 1] Derek Pokrzywinski appeals the district court judgment affirming a North Dakota Department of Transportation hearing officer's decision suspending his driving privileges for three years. We affirm.

I

[¶ 2] On June 15, 2013, Highway Patrol Officer Anthony DeJean arrested Pokrzywinski for driving under the influence ("DUI") and, subsequently, issued a Report and Notice form, to suspend Pokrzywinski's driving privileges. Pokrzywinski requested and received an administrative hearing, which occurred on July 9, 2013.

[¶ 3] On June 15, 2013, at approximately 8:30 p.m., Pokrzywinski was in a single vehicle motorcycle crash. On Deputy Richard Sherlock's arrival, he observed Pokrzywinski on a backboard being loaded on an ambulance stretcher. While in the ambulance, Deputy Sherlock asked Pokrzywinski what happened, and Pokrzywinski responded that "he had a couple beers, hit a pothole and lost control of his motorcycle." While talking to Pokrzywinski, Deputy Sherlock observed a strong odor of alcohol coming from Pokrzywinski's mouth and Pokrzywinski had bloodshot, watery eyes. Based on his training, Deputy Sherlock concluded Pokrzywinski was impaired. Deputy Sherlock observed Pokrzywinski's hand was wrapped in gauze and his head was bleeding. Deputy Sher-

lock's medical training led him to believe Pokrzywinski's head injury was not affecting his ability to communicate. Deputy Sherlock observed the road had potholes.

[¶ 4] Highway Patrol Officer Matthew Peschong testified that he spoke with an eye witness. The eye witness reported the crash after observing it. The eye witness also claimed he had attempted to stop Pokrzywinski from driving because he believed Pokrzywinki was intoxicated and had been told by Pokrzywinski that he had been traveling at 90 m.p.h. prior to the crash. The length of the crash made it obvious to Officer Peschong that Pokrzywinski was traveling at considerable speed. After receiving the information from the eye witness and Deputy Sherlock, Officer Peschong concluded Pokrzywinski was under the influence of alcohol during the crash and directed Officer DeJean to meet Pokrzywinski at Altru hospital in Grand Forks to arrest him for DUI and request Pokrzywinski submit to a blood test. Officer Peschong did not receive any reports that Pokrzywinski had lost consciousness. Officer Peschong heard on a broadcast, which he assumed was emergency personnel, that Pokrzywinski was alert and awake at the scene of the crash.

[¶ 5] Before arresting Pokrzywinski, Officer DeJean was informed by Officer Peschong that (1) an odor of alcohol was detected coming from Pokrzywinski at the scene of the crash, (2) the eye witness had observed Pokrzywinski drinking in excess, (3) Pokrzywinski had been traveling at a high rate of speed when he crashed, and (4) the location of the crash. Officer DeJean was waiting at Altru hospital when Pokrzywinski arrived and detected an odor of alcohol as he passed. Ambulance personnel stated Pokrzywinski had been conscious the entire time in the ambulance. At approximately 10:38 p.m., Officer DeJe-

an was allowed to speak to Pokrzywinski. Officer DeJean again detected an odor of alcohol coming from Pokrzywinski, and Pokrzywinski claimed he had consumed two beers. Officer DeJean observed Pokrzywinski had been in a serious motorcycle crash because Pokrzywinski was connected to several machines, had bandaged extremities, and a bandaged head. Officer DeJean arrested Pokrzywinski and asked him to submit to a blood test. Pokrzywinski asked if he had to submit. Officer DeJean explained he could not offer legal advice, and Pokrzywinski refused to submit to the blood test. Officer DeJean did not advise Pokrzywinski of the North Dakota implied consent law because more than two hours had elapsed since the crash. Officer DeJean issued a Report and Notice form to suspended Pokrzywinski's driving privileges and placed it with Pokrzywinski's personal belongings in his hospital room. In the probable cause section of the Report and Notice form, Officer DeJean checked boxes indicating "crash" and "odor of alcoholic beverage" and noted that Pokrzywinski "admitted consuming 2 beers." After leaving Pokrzywinski's room, Officer DeJean was directed by his superior to advise Pokrzywinski of the implied consent law because it could still be in effect even though more than two hours had elapsed since the crash. Officer DeJean returned to Pokrzywinski's hospital room to request, for the second time, Pokrzywinski submit to a blood test and advised him of the implied consent law. Pokrzywinski again refused to submit to the blood test. During this second encounter, Officer DeJean observed Pokrzywinski was very sedated and Pokrzywinski's communication was mumbled, but Officer DeJean was able to discern Pokrzywinski said no.

[¶ 6] Pokrzywinski testified the last thing he remembered on June 15, 2013, was slowing down due to the potholes and gravel. Pokrzywinski then remembered waking up in the hospital the morning of June 16, 2013. Pokrzywinski believed his lack of memory of the crash and subsequent events was due to head trauma. Pokrzywinski testified that he consumed two beers prior to the crash, he did not remember how fast he was driving but usually goes about 45 to 55 m.p.h. on that road, and the crash was caused by poor road conditions. Pokrzywinski's injuries included "head was scalped back five inches," lost pinkie finger on his right hand, severe skin loss on ring finger on his right hand, broken collar bone, and road rash on other parts of his body. Pokrzywinski explained he does not know if he suffered a concussion, but indicated the doctor who treated his hand noted loss of consciousness, and the ambulance personnel told him they had to keep waking him because he was losing consciousness. Pokrzywinski required surgery, a plate on his collar bone, a skin graft on his right hand, and approximately 30 staples on his head. Pokrzywinski testified he would have consented to the blood test if he had his normal cognitive abilities and known his license would be revoked for three years. Pokrzywinski and his mother testified she had to consent to medical treatment on his behalf. Pokrzywinski's mother testified Pokrzywinski could not physically make a mark on the medical forms and was refusing treatment. She had been an emergency medical technician and it was "obvious" to her that Pokrzywinski's injuries were "very traumatic." Pokrzywinski's mother believed Pokrzywinski was not thinking straight because he could not answer her questions or say much more than "I'm okay, mom" and he stared straight up at the ceiling.

[¶ 7] The hearing officer concluded the Report and Notice form included sufficient information regarding the arresting offi-

cer's reasonable grounds to believe Pokrzywinski had been driving a vehicle while under the influence of intoxicating liquor, and Pokrzywinski effectively refused consent to the first request for a blood test. The hearing officer noted that the implied consent advisory was not necessary, under N.D.C.C. § 39–20–05(3), for purposes of the administrative hearing. The hearing officer did not consider Pokrzywinski's second response to be either a refusal nor a consent to the blood test. The hearing officer suspended Pokrzywinski's driving privileges for three years. Pokrzywinski appealed the hearing officer's decision and the district court affirmed the hearing officer's decision. Pokrzywinski appealed.

[¶ 8] On appeal, Pokrzywinski argues the director lacked the authority to revoke his driving privileges because the Report and Notice form did not show the law enforcement officer had reasonable grounds to believe he had been driving a vehicle under the influence of intoxicating liquor, and he could not effectively refuse consent because of his injuries.

## II

[¶ 9] Our review of an administrative decision to suspend a driver's license is governed by N.D.C.C. ch. 28–32, the Administrative Agencies Practice Act. *Potratz v. N.D. Dep't of Transp.*, 2014 ND 48, ¶ 7, 843 N.W.2d 305. "This Court reviews the administrative agency's decision when a district court's review of an administrative agency's decision is appealed." *Id.*

"The review is limited to the record before the administrative agency. We review the administrative hearing officer's decision and give deference to the administrative hearing officer's findings. We do not, however, make independent findings or substitute our judgment for that of the agency. Rather, we determine only whether a reasoning mind reasonably could have concluded the findings were supported by the weight of the evidence from the entire record. We defer to the hearing officer's opportunity to judge the credibility of witnesses."

*Id.* (quoting *Pesanti v. N.D. Dep't of Transp.*, 2013 ND 210, ¶ 7, 839 N.W.2d 851). "Whether the facts meet the legal standard, rising to the level of probable cause or reasonable and articulable suspicion, is a question of law fully reviewable on appeal." *Aamodt v. N.D. Dep't of Transp.*, 2004 ND 134, ¶ 12, 682 N.W.2d 308. An administrative hearing officer's decision must be affirmed, unless:

1. The order is not in accordance with the law.

2. The order is in violation of the constitutional rights of the appellant.

3. The provisions of this chapter have not been complied with in the proceedings before the agency.

4. The rules or procedure of the agency have not afforded the appellant a fair hearing.

5. The findings of fact made by the agency are not supported by a preponderance of the evidence.

6. The conclusions of law and order of the agency are not supported by its findings of fact.

7. The findings of fact made by the agency do not sufficiently address the evidence presented to the agency by the appellant.

8. The conclusions of law and order of the agency do not sufficiently explain the agency's rationale for not adopting any contrary recommenda-

tions by a hearing officer or an administrative law judge.

N.D.C.C. § 28–32–46.

### III

[¶ 10] Pokrzywinski argues the district court erred in concluding the hearing officer had the authority to suspend his driving privileges because the Report and Notice form did not show the arresting officer had reasonable grounds to believe Pokrzywinski had been driving the motorcycle while under the influence of intoxicating liquor.

 [¶ 11] Under N.D.C.C. § 39–20–04(1), the temporary operator's permit, also known as the Report and Notice form, must:

> [S]how[ ] that the officer had reasonable grounds to believe the person had been driving ... while in violation of section 39–08–01 ... was involved in a traffic accident as a driver, and in conjunction with the violation or accident the officer has, through the officer's observations, formulated an opinion that the person's body contains alcohol, that the person was lawfully arrested if applicable, and that the person had refused to submit to the test ... under section 39–20–01....

Reasonable grounds is synonymous with probable cause. *Aamodt*, 2004 ND 134, ¶ 14, 682 N.W.2d 308. Probable cause "exists when the facts and circumstances that a police officer knows or that he has reasonably trustworthy information about warrant a person of reasonable caution to believe that an offense has been or is being committed." *Presteng v. Dir., N.D. Dep't of Transp.*, 1998 ND 114, ¶ 7, 579 N.W.2d 212. Probable cause does not require the officer to "have knowledge or facts sufficient to establish guilt." *Id.* Probable cause to arrest for DUI requires the law enforcement officer to observe some signs of impairment and have some reason to

believe the impairment is caused by alcohol consumption. *Moran v. N.D. Dep't of Transp.*, 543 N.W.2d 767, 770 (N.D.1996).

 [¶ 12] Pokrzywinski argues the facts of this case are similar to those in *Aamodt*. In *Aamodt*, 2004 ND 134, ¶ 10, 682 N.W.2d 308, the arresting officer, in the probable cause section of the Report and Notice form, checked the boxes indicating "already stopped" and "odor of alcoholic beverage." It was conceded in *Aamodt* that this information was insufficient to show probable cause. *Id.* at ¶ 15. In the present case, in the probable cause section of the Report and Notice form, Deputy DeJean did not include all of the information provided to him by Officer Peschong, but he did check the boxes indicating "crash" and "odor of alcoholic beverage" and noted Pokrzywinski "admitted consuming 2 beers." This Court has concluded that probable cause to arrest for DUI existed when "there ha[d] been an accident coupled with other evidence of alcohol consumption." *Presteng*, 1998 ND 114, ¶ 8, 579 N.W.2d 212. "The fact an accident occurred is at least suggestive of impairment even though there may be other factors which are relevant to the actual cause of the accident." *Id.*

> "While other causes of an accident are relevant to the ultimate weight of the evidence at trial, other possible causes do not negate the reasonableness of a belief that alcohol probably contributed to an accident when there is reasonable evidence of alcohol consumption. The inquiry is whether the officer had reason to believe that unlawful activity probably occurred, not whether there is sufficient evidence for a criminal conviction."

*Id.* (quoting *Wilhelmi v. Dir. of Dep't of Transp.*, 498 N.W.2d 150, 156 (N.D.1993)). "An individual's own words" is a relevant factor in determining probable cause.

*Engstrom v. N.D. Dep't of Transp.*, 2011 ND 235, ¶ 15, 807 N.W.2d 602.

[¶ 13] Here, Pokrzywinski was involved in a single vehicle motorcycle accident. In addition to the evidence of the motorcycle accident, one of the investigating officers and the arresting officer observed an odor of alcohol coming from Pokrzywinski while speaking with him, and Pokrzywinski told both the investigating officer and arresting officer that he had consumed two beers. These facts provided reasonable evidence of alcohol consumption. The crash constituted a sign of impairment and the knowledge obtained by the officers, through observation and information provided by Pokrzywinski, suggested the impairment was caused by alcohol. The arresting officer indicated this information in the probable cause section of the Report and Notice form by checking the boxes "crash" and "odor of alcoholic beverage" and noting Pokrzywinski "admitted consuming 2 beers." The hearing officer's conclusion of law that the arresting officer included sufficient information on the Report and Notice form to show reasonable grounds to believe Pokrzywinski had been driving a vehicle while under the influence of intoxicating liquor is not contrary to North Dakota law and is supported by its findings of fact. Therefore, the hearing officer had the authority to suspend Pokrzywinski's driving privileges.

## IV

[¶ 14] Pokrzywinski argues the district court erred in concluding the hearing officer did not err in finding his refusal to submit to chemical testing was valid. Pokrzywinski argues he was incapable of

withdrawing his consent based on his injuries and medical condition.

[¶ 15] "Section 39–20–01, N.D.C.C., establishes that consent to testing is presumed." *Grosgebauer v. N.D. Dep't of Transp.*, 2008 ND 75, ¶ 11, 747 N.W.2d 510. "Withdrawing the implied consent provided under N.D.C.C. § 39–20–01 requires an affirmative refusal to be tested." *Id.* at ¶ 9. "For those able to make a conscious decision, refusal does not have to be explicitly stated." *Id.* Whether a driver refused to take a requested test is a question of fact. *Obrigewitch v. Dir., N.D. Dep't of Transp.*, 2002 ND 177, ¶ 14, 653 N.W.2d 73. Section 39–20–03, N.D.C.C., provides: "Any person who is dead, unconscious, or otherwise in a condition rendering the person incapable of refusal, must be deemed not to have withdrawn the consent provided by section 39–20–01 and the test or tests may be given." Whether a driver was in a condition rendering the driver incapable of refusal is a question of fact. There have been no previous cases before this Court examining how a lower court determines whether a person is incapable of refusal based on their condition. However, N.D.C.C. § 39–20–03 is almost identical to Minn.Stat. § 169A.51, subd. 6.[1] Section 169A.51, subd. 6, Minn.Stat., states "[a] person who is unconscious or who is otherwise in a condition rendering the person incapable of refusal is deemed not to have withdrawn the [implied] consent . . . and the test may be given." The Minnesota statute has been interpreted to require a factual determination. *See Douglas v. Comm'r of Pub. Safety*, 385 N.W.2d 850 (Minn.Ct.App.1986); *Stiles v. Comm'r of Pub. Safety*, 369 N.W.2d 347 (Minn.Ct.App.1985). A trial court's finding that an officer had no indi-

---

1. Minn.Stat. § 169.123 was repealed in 2000, effective January 1, 2001, the new statute is found at Minn.Stat. § 169A.51, subd. 6.

cation that a driver was physically incapable of refusal at the time of invoking the implied consent law will be affirmed if there is adequate evidence to support it. *Villeneuve v. Comm'r of Pub. Safety*, 417 N.W.2d 304, 308 (Minn.Ct.App.1988). We are persuaded by the reasoning of the Minnesota courts, and we believe N.D.C.C. § 39–20–03, like Minn.Stat. § 169A.51, subd. 6, requires a factual determination.

[¶ 16] Pokrzywinski relies on *Hughey v. Dep't of Motor Vehicles*, 235 Cal.App.3d 752, 1 Cal.Rptr.2d 115 (1991), *Douglas*, 385 N.W.2d 850, and *Stiles*, 369 N.W.2d 347, which are all cases involving drivers who were deemed incapable of refusing. Pokrzywinski's reliance is misplaced. In each of those cases, substantial evidence was presented establishing the individuals were incapable of refusing due to medically-documented conditions.

[¶ 17] In *Hughey*, 1 Cal.Rptr.2d at 120, the court held the trial court's conclusions that the serious head injury was the cause of Hughey's mental state following the accident, and Hughey was behaving irrationally at the scene, was unconscious until the ambulance arrived, and was "fading in and out" were based on reasonably drawn inferences which were supported by substantial evidence. The evidence Hughey presented included (1) his medical records with a notation that his mental orientation was "variable," and (2) an experienced neurologist testified that Hughey had suffered a serious head injury during the accident which would explain his bizarre combative behavior and amnesia, and would have made it difficult, if not impossible, for Hughey to have understood the admonition delivered by the officer, nor would Hughey have understood the significance of his refusal to submit. *Id.* at 117. The officer also testified that Hughey would go from responsive to irrational,

calm to belligerent, uncooperative, and refused medical treatment. *Id.* at 116.

[¶ 18] In *Douglas*, 385 N.W.2d at 852, the court concluded the record could not sustain the trial court's determination that Douglas was capable of refusing the test. The evidence Douglas presented included (1) his medical records, and (2) the treating physician who explained Douglas had been in a "shock condition," which would allow him to be conscious, not know what he was saying, and indicate the brain was not functioning right. *Id.* at 851–52.

[¶ 19] In *Stiles*, 369 N.W.2d at 353, the court concluded the officer, who unqualifiedly concluded Stiles was disoriented during the reading of the implied consent advisory, should have deemed Stiles incapable of refusing and ordered the test. The parties did not dispute that Stiles was disoriented during the officer's reading of the implied consent advisory. *Id.* at 351. The evidence Stiles presented included: (1) he had become unconscious after a seizure, (2) he had sustained a concussion, and (3) the treating physician testified Stiles was "oriented only to person" and repeated the same question over and over again. *Id.* at 349.

[¶ 20] Pokrzywinski also relies on *Commw., Dep't of Transp., Bureau of Driver Licensing v. Groscost*, 142 Pa. Cmwlth. 36, 596 A.2d 1217, 1220 (1991), which explains that medical evidence is not required to prove incapacity to refuse if the injuries are obviously incapacitating. Again, Pokrzywinski's reliance is misplaced because the case requires an injury to be obvious and incapacitating, not just obvious. In *Groscost*, the court concluded the trial court's finding that Groscost's injury was obvious, a deep facial laceration two and one-half to three inches long, and incapacitating was supported by substantial evidence. *Id.* at 1220–21. The substantial evidence included medical records,

Groscost's testimony, and the officer's testimony. *Id.* at 1220.

[¶ 21] The record before us indicates Pokrzywinski's injuries were easily observed, but it is not obvious the injuries incapacitated him. An investigating officer and arresting officer observed injuries to Pokrzywinski's hand and head. None of the law enforcement officers involved had any information that would lead them to believe that Pokrzywinski had lost consciousness or was disoriented. To the contrary, Deputy Sherlock testified Pokrzywinski's ability to communicate did not appear to be affected; Officer Peschong testified he heard on a broadcast that Pokrzywinski was alert and awake at the scene of the crash; and, Officer DeJean testified he was told by ambulance personnel that Pokrzywinski had been conscious the entire time in the ambulance, and Pokrzywinski was able to answer questions in an appropriate manner that suggested his comprehension was not affected during the first encounter in the hospital room. The only evidence presented to the hearing officer that Pokrzywinski lost consciousness was based on the medical record from the doctor treating Pokrzywinski's hand and Pokrzywinski's testimony that ambulance personnel told him he kept losing consciousness. The only evidence presented to the hearing officer that Pokrzywinski was in a condition that rendered him incapable of refusal was based on his mother's testimony that he was not in his right mind and Pokrzywinski's testimony that he would have consented to the blood test if he had his normal cognitive ability and known his license would be revoked. The hearing officer indicated "[t]here was no credible evidence that Mr. Pokrzywinski was unconscious or incompetent when he refused the blood test the first time." We defer to the hearing officer to judge the credibility of the witnesses. *Potratz,* 2014

ND 48, ¶ 7, 843 N.W.2d 305. The findings of fact made by the hearing officer that Pokrzywinski was not incapable of refusal and Pokrzywinski refused to submit to the blood test are supported by a preponderance of the evidence.

V

[¶ 22] We affirm the district court's judgment. The hearing officer's findings of fact are supported by a preponderance of the evidence, the conclusions of law and order are supported by the findings of fact, and the decision is supported by the conclusions of law.

[¶ 23] GERALD W. VANDE WALLE, C.J., DANIEL J. CROTHERS, DALE V. SANDSTROM, and CAROL RONNING KAPSNER, JJ., concur.