James Christian **GRETSFELD**, Petitioner, Appellant,

v.

**COMMISSIONER OF PUBLIC SAFETY, Respondent.**

No. Cx–84–1116.

Court of Appeals of Minnesota.

Jan. 8, 1985.

Jerrold M. Hartke, Hartke & Montpetit, South St. Paul, for appellant.

Hubert H. Humphrey, III, State Atty. Gen., James B. Early, Sp. Asst. Atty. Gen., St. Paul, for respondent.

Considered and decided by FOLEY, P.J., and LANSING and NIERENGARTEN, JJ., with oral argument waived.

## OPINION

FOLEY, Judge.

James Gretsfeld appeals from revocation of his driver's license. He challenges the trial court's finding that he was driving while under the influence, and that he had a blood alcohol concentration in excess of .10. We affirm.

## FACTS

About 2:00 one morning a woman called West St. Paul police to report that her boyfriend and neighbor James Gretsfeld had threatened to shoot out her window or knock down her door.

Officers Sherman Ellison and Thomas Flaherty responded to the call. They testified that they saw Gretsfeld back out of his drive way and drive toward them. They stopped him, arrested him for making terroristic threats, and placed him in the back of the squad car.

Flaherty noted alcohol on Gretsfeld's breath when he placed him in the squad car. At the police station both officers noted that Gretsfeld, in addition to smelling of alcohol, had bloodshot eyes, slurred speech and poor balance. Flaherty read Gretsfeld the implied consent advisory, and he consented to take a breath test. Flaherty administered the test following the Bureau of Criminal Apprehension's 25 step checklist. The breathalyzer analysis showed that Gretsfeld had a blood alcohol concentration of .13.

Gretsfeld recounted the incident somewhat differently. He testified that he was seated in his car when the police arrived. He started the engine only so he could lower the electric window to talk to the officers.

Gretsfeld testified that when Flaherty administered the breath test he did not refer to any check list. In addition, Gretsfeld said that while he was trying to give a breath sample Flaherty pounded him on the back causing him to gasp. Flaherty said he placed his hand on Gretsfeld's back during the test to check his exhalation, but denied pounding him on the back.

Gretsfeld testified that he had only two or three beers that evening. A former staff chemist for the Ohio State Highway Patrol testified that an individual of Gretsfeld's body weight would have a maximum blood alcohol concentration of .06 after consuming three beers. The chemist also tes-

tified that blows to Gretsfeld's back would invalidate a breath test because a gasp would mix stomach air into the breath sample.

## ISSUE

Does the evidence support the trial court's finding that police had reasonable and probable grounds to believe that Gretsfeld had been driving while under the influence of alcohol and that he had a blood alcohol concentration of in excess of .10?

## ANALYSIS

Minn.Stat. § 169.123, subd. 4 (Supp. 1983), requires the Commissioner of Public Safety to revoke a person's driving privileges

upon certification by the peace officer that there existed reasonable and probable grounds to believe the person had been driving, operating or in physical control of a motor vehicle while under the influence of alcohol or a controlled substance and that the person submitted to chemical testing and the test results indicate an alcohol concentration of 0.10 or more.

The trial court found that the police had reasonable and probable grounds to believe that Gretsfeld was driving while under the influence. The court also found that a properly administered breathalyzer test showed Gretsfeld had a blood alcohol concentration in excess of .10. Gretsfeld challenges these findings, contending that the trial court failed to give sufficient weight to his testimony and that of his expert witness.

■ However, trial court findings must be viewed in the light most favorable to the prevailing party. They will not be set aside "unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." Minn.R.Civ.P. 52.01. Whenever the evidence supporting the court's finding as to any fact issue is entirely oral testimony this court will disturb the finding only in the most unusual circumstances. *Hunt v. Commissioner of Public Safety*, 356 N.W.2d 801 (Minn.Ct. App.1984).

■ The trial court's finding that police had grounds to believe that Gretsfeld was driving under the influence is supported by Officers Ellison's and Flaherty's testimony that they saw Gretsfeld drive toward them and observed signs of intoxication, including bloodshot eyes, slurred speech, poor balance, and the smell of alcohol on his breath. *See State v. White*, 349 N.W.2d 603 (Minn.Ct.App.1984) (eyewitness testimony by state trooper sufficient to support finding that defendant was driving vehicle); *Steinberg v. State*, 357 N.W.2d 413 (Minn. Ct.App.1984) (bloodshot and watery eyes, slurred speech and strong odor of alcohol gave officer probable cause to believe driver was under the influence).

■ Similarly, the court's finding that Gretsfeld had a blood alcohol concentration in excess of .10 is supported by Officer Flaherty's testimony that he properly performed a breath test according to the 25 point BCA checklist and that the result was a reading of .13. Gretsfeld's contention that the test results are invalid rests upon his claim that Flaherty pounded him on the back during the test, an act which Flaherty denies.

## DECISION

We affirm revocation of Gretsfeld's license. Faced with contradictory evidence as to Gretsfeld's driving and Flaherty's administration of the breath test, the court was entitled to believe the officers' testimony.