*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

# STATE OF MINNESOTA
# IN COURT OF APPEALS
# A14-1322

Peter Gregory Marcus, petitioner,
Appellant,

vs.

Commissioner of Public Safety,
Respondent.

**Filed April 20, 2015**
**Affirmed**
**Kirk, Judge**

Otter Tail County District Court
File No. 56-CV-14-265

Charles A. Ramsay, Daniel J. Koewler, Ramsay Law Firm, P.L.L.C., Roseville, Minnesota (for appellant)

Lori Swanson, Attorney General, Jeffrey S. Bilcik, Assistant Attorney General, St. Paul, Minnesota (for respondent)

Considered and decided by Kirk, Presiding Judge; Ross, Judge; and Reilly, Judge.

## U N P U B L I S H E D   O P I N I O N

**KIRK**, Judge

Appellant challenges the district court's order sustaining the revocation of his driver's license. We affirm.

## FACTS

At approximately 4:11 a.m. on October 20, 2013, Fergus Falls Police Officer Kevin Sonstebo responded to a call from dispatch about a single-vehicle accident. When Officer Sonstebo arrived at the scene of the accident, he observed an unattended vehicle with extensive damage on the shoulder of the road with its engine running and its radio playing. Debris, including beer cans, covered three of the four lanes of traffic. Inside the vehicle, Officer Sonstebo observed more beer cans and smelled alcohol.

Officer Sonstebo did not see any possible occupants of the vehicle, so he and two other officers who had arrived at the scene began searching the area. Five to six minutes later, Officer Sonstebo found a man, later identified as appellant Peter Gregory Marcus, lying on the shoulder of the road approximately 50 feet from the vehicle. Marcus was breathing but unresponsive and Officer Sonstebo observed blood on his head and back, leading him to believe that Marcus had skidded across the pavement. Officer Sonstebo called for an ambulance.

Officer Sonstebo attempted to communicate with Marcus while they waited for the ambulance to arrive, and Marcus eventually revived and became fairly coherent. Officer Sonstebo asked Marcus if he was the driver of the vehicle, and Marcus responded, "Ah-huh," which Officer Sonstebo understood as "yes." Officer Sonstebo asked Marcus if there were any other occupants of the vehicle, and Marcus responded "uh-uh," which Officer Sonstebo understood to be "no." Officer Sonstebo assisted the ambulance crew in tending to Marcus as soon as they arrived at the scene. When the ambulance crew rolled Marcus over, he exhaled and Officer Sonstebo smelled alcohol on Marcus's breath.

The ambulance crew placed Marcus in the ambulance and drove him to the hospital, which was located approximately a mile and one-half to two miles from the site of the accident. Officer Sonstebo followed behind the ambulance in his squad car while the other two officers remained at the scene.

Officer Sonstebo arrived at the hospital at approximately 4:45 a.m. and found the emergency room staff attempting to stabilize Marcus. Marcus was going in and out of consciousness and was combative with the staff. Officer Sonstebo waited at the emergency room while the staff provided medical care to Marcus. The staff eventually informed Officer Sonstebo that Marcus would be airlifted to a hospital in Fargo, North Dakota, immediately. Officer Sonstebo told the emergency room staff that he wanted to read the implied-consent advisory and obtain a blood or urine test before Marcus was airlifted.

At approximately 5:15 a.m., Officer Sonstebo read the implied-consent advisory to Marcus, who appeared to be unconscious. Marcus did not respond at any time to the advisory. Officer Sonstebo completed the implied-consent advisory at approximately 5:17 a.m., and an emergency room doctor withdrew a blood sample from Marcus. Subsequent testing by the Minnesota Bureau of Criminal Apprehension revealed an alcohol concentration of .20.

Respondent Minnesota Commissioner of Public Safety revoked Marcus's driver's license under the implied-consent law, and Marcus petitioned for judicial review of the revocation. At a hearing addressing Marcus's petition, Officer Sonstebo testified that "[d]ue to the exigent circumstances and the immediate transport of [Marcus] to another

3

hospital, I didn't feel that there was enough time to get a search warrant taken care of." He elaborated that "the time it would take for me to obtain that search warrant and the medical staff wanting to transport him, he would be out of my jurisdiction by that time."

The district court sustained the revocation of Marcus's driver's license, concluding that Officer Sonstebo had probable cause to believe that Marcus was driving while impaired, Marcus's due process rights were not violated, and Officer Sonstebo's warrantless search of Marcus's blood was justified under the exigent-circumstances exception to the warrant requirement. This appeal follows.

## D E C I S I O N

In reviewing a district court's order sustaining the revocation of an individual's driver's license, this court will not set aside a district court's findings of fact unless they are clearly erroneous. *Gretsfeld v. Comm'r of Pub. Safety*, 359 N.W.2d 744, 746 (Minn. App. 1985). We give due regard to the district court's opportunity to judge the credibility of the witnesses. *Id.* We will overturn a district court's conclusions of law only when the district court "erroneously construed and applied the law to the facts of the case." *Dehn v. Comm'r of Pub. Safety*, 394 N.W.2d 272, 273 (Minn. App. 1986).

The United States and Minnesota Constitutions prohibit warrantless searches and seizures. U.S. Const. amend. IV; Minn. Const. art I, § 10. The collection and testing of a person's blood sample constitutes a search under the Fourth Amendment to the United States Constitution and therefore requires a warrant or an exception to the warrant requirement. *Skinner v. Ry. Labor Execs.' Ass'n*, 489 U.S. 602, 616-17, 109 S. Ct. 1402, 1412-13 (1989); *State v. Brooks*, 838 N.W.2d 563, 568 (Minn. 2013), *cert. denied*, 134

4

S. Ct. 1799 (2014). A search is generally unreasonable unless it is conducted pursuant to a warrant issued upon probable cause. *Skinner*, 489 U.S. at 619, 109 S. Ct. at 1414. But the police do not need a warrant if the person who is the subject of the search consents to the search. *Brooks*, 838 N.W.2d at 568. Another exception to the warrant requirement, the exigent-circumstances exception, applies when "the exigencies of the situation makes the needs of law enforcement so compelling that a warrantless search is objectively reasonable under the Fourth Amendment." *Kentucky v. King*, 131 S. Ct. 1849, 1856 (2011) (quotations omitted).

Under Minn. Stat. § 169A.51, subd. 1(a) (2014), "[a]ny person who drives, operates, or is in physical control of a motor vehicle within this state . . . consents . . . to a chemical test of that person's blood, breath, or urine for the purpose of determining the presence of alcohol . . . ." In addition, "[a] person who is unconscious or who is otherwise in a condition rendering the person incapable of refusal is deemed not to have withdrawn the consent provided by subdivision 1 and the test may be given." Minn. Stat. § 169A.51, subd. 6. Marcus contends that he did not provide valid consent under Minn. Stat. § 169A.51, subd. 6, because the statute violates the Fourth Amendment.

In *State v. Wiehle*, 287 N.W.2d 416, 418 (Minn. 1979), the Minnesota Supreme Court considered whether the results of a blood test taken from an unconscious person may be used in a license-revocation proceeding. In that case, Wiehle was involved in a hit-and-run accident, and police officers who responded to the scene informed him that he was under arrest. 287 N.W.2d at 417. As the officers were transporting Wiehle to the police station, Wiehle became unconscious and was rushed to the hospital. *Id.* At an

5

officer's direction, a blood sample was taken from Wiehle, and subsequent testing revealed an alcohol concentration of .157. *Id.* The commissioner of public safety revoked Wiehle's driver's license, and the district court sustained the revocation. *Id.*

On appeal, the supreme court extended its holding in *State v. Oevering*, 268 N.W.2d 68 (Minn. 1978), to implied-consent proceedings. *Id.* at 418. In *Oevering*, the supreme court concluded that a blood sample taken from an unconscious person may be used in a criminal negligence case if there was probable cause and the failure to take the sample immediately would result in the loss of the evidence. 268 N.W.2d at 69. The *Wiehle* court concluded that the implied-consent law was constitutional because it permits a police officer to take a blood sample from a driver when there is "an exigency to preserve evidence, probable cause to support formal arrest, and a highly unobtrusive search." 287 N.W.2d at 418. The supreme court concluded that Wiehle's statutory consent remained continuous when he was unconscious and permitted use of the blood sample obtained from him in the implied-consent proceeding. *Id.* at 419. But the supreme court emphasized that the prerequisites of probable cause to arrest and an exigency to preserve evidence must be met before the evidence is admissible. *Id.*

Recently, in *Brooks*, the Minnesota Supreme Court rejected Brooks's argument that the legislature does not have the power to imply someone's consent to waive his Fourth Amendment rights as a condition of granting him the privilege of driving in Minnesota. 838 N.W.2d at 572. The supreme court stated that Brooks's argument was inconsistent with the United States Supreme Court's decision in *Missouri v. McNeely*, 133 S. Ct. 1552 (2013), because

6

> [a]s the Supreme Court recognized in *McNeely*, implied consent laws, which 'require motorists, as a condition of operating a motor vehicle within the State, to consent to [alcohol concentration] testing if they are arrested or otherwise detained on suspicion of a drunk-driving offense,' are '*legal tools*' states continue to have to enforce their drunk driving laws.

*Id.* (quoting *McNeely*, 133 S. Ct. at 1566). The supreme court further stated that "[b]y using this 'legal tool' and revoking a driver's license for refusing a test, a state is doing the exact thing Brooks claims it cannot do—conditioning the privilege of driving on agreeing to a warrantless search." *Id.*

Here, the record establishes that Marcus was unconscious at the time that Officer Sonstebo read him the implied-consent advisory. Thus, Marcus did not withdraw his consent to testing under Minn. Stat. § 169A.51, subd. 6. But, under *Wiehle*, constitutional application of that statute requires probable cause to arrest and exigent circumstances. Marcus does not challenge the district court's conclusion that Officer Sonstebo had probable cause to arrest him, but he contends that exigent circumstances were not present.

In *Schmerber v. California*, 384 U.S. 757, 766-72, 86 S. Ct. 1826, 1833-36 (1966), the United States Supreme Court considered whether a driver's Fourth Amendment rights were violated when a police officer directed a physician to withdraw his blood. In that case, Schmerber was driving himself and a companion from a bowling alley where they had been drinking when the vehicle skidded, crossed the road, and hit a tree. *Schmerber*, 384 U.S. at 758 n.2, 86 S. Ct. at 1829 n.2. Both Schmerber and his companion were injured as a result of the crash and were transported to the hospital. *Id.* At the hospital, a

7

police officer arrested Schmerber and directed a physician to withdraw a blood sample from him. *Id.* at 758, 86 S. Ct. at 1829. Testing of the blood sample revealed that Schmerber was intoxicated. *Id.* at 759, 86 S. Ct. at 1829. Schmerber objected to the court's receipt of evidence of the analysis of his blood because he argued that the blood had been withdrawn in violation of his right not to be subject to unreasonable searches and seizures under the Fourth Amendment. *Id.* The district court convicted Schmerber of driving while under the influence, and the Appellate Department of the California Superior Court affirmed. *Id.*

The United States Supreme Court affirmed Schmerber's conviction. *Id.*, 86 S. Ct. at 1830. The Supreme Court reaffirmed the importance of a police officer obtaining a search warrant before searching an individual's body for evidence, but held that under the particular circumstances of the case, the police officer "might reasonably have believed that he was confronted with an emergency, in which the delay necessary to obtain a warrant under the circumstances, threatened the destruction of evidence." *Id.* at 770, 86 S. Ct. at 1835 (quotation omitted). The Supreme Court noted that the percentage of alcohol in the blood begins diminishing shortly after drinking stops and stated that "[p]articularly in a case such as this, where time had to be taken to bring the accused to a hospital and to investigate the scene of the accident, there was no time to seek out a magistrate and secure a warrant." *Id.* at 770-71, 86 S. Ct. at 1836.

In *McNeely*, the United States Supreme Court held that the dissipation of blood-alcohol levels does not create a per se exigency justifying a warrantless search. 133 S. Ct. at 1561. Instead, the Supreme Court held that exigency must be determined on a

case-by-case basis based on an examination of the totality of the circumstances. *Id.* at 1563. The Supreme Court stated that its conclusion was consistent with its decision in *Schmerber*, noting that it had decided that case based on an examination of the totality of the circumstances. *Id.* at 1559-60.

Here, the district court properly considered the totality of the circumstances before concluding that exigent circumstances existed at the time Officer Sonstebo directed an emergency room doctor to withdraw a blood sample. An examination of those circumstances establishes that exigent circumstances justifying a warrantless withdrawal of Marcus's blood were present. When Officer Sonstebo first responded to the scene of the accident at 4:11 a.m., he found Marcus unconscious and seriously injured after being involved in a single-vehicle crash. While Officer Sonstebo waited with Marcus for the ambulance crew to arrive, Marcus briefly became responsive. Officer Sonstebo helped the crew move Marcus into the ambulance and then followed the ambulance to the hospital. Once Officer Sonstebo arrived at the hospital at 4:45 a.m., he found Marcus receiving treatment and going in and out of consciousness. The staff eventually informed Officer Sonstebo that Marcus would be immediately airlifted to a hospital in a different state. Based on that information, Officer Sonstebo read the implied-consent advisory to Marcus at 5:15 a.m. At that point, approximately 30 minutes had passed since Officer Sonstebo had arrived at the hospital and approximately one hour and four minutes had passed since Officer Sonstebo responded to the call from dispatch about the accident.

Marcus argues that Officer Sonstebo had sufficient time to get a warrant while he waited for the ambulance and at the hospital. But the record shows that Marcus was

9

going in and out of consciousness while he waited for the ambulance, at one point gaining enough awareness to interact with Officer Sonstebo. Marcus continued to go in and out of consciousness once he arrived at the hospital. Officer Sonstebo could have reasonably believed that Marcus would regain consciousness and be able to make a decision about whether he consented to an alcohol-concentration test. Once the hospital staff informed Officer Sonstebo that it needed to airlift Marcus to a different hospital in a different state, Marcus was again unconscious. At that point, Officer Sonstebo could have reasonably believed that he was confronted with an emergency and that it would not be feasible to obtain a reliable blood test from Marcus after he was airlifted to another state.

Accordingly, the district court did not err by concluding that exigent circumstances justified the warrantless search of Marcus's blood. Because exigent circumstances and probable cause to arrest existed, Marcus's Fourth Amendment rights were not violated by the withdrawal of his blood under Minn. Stat. § 169A.51, subd. 6.

**Affirmed.**